**Earl L. CRAMER, an individual, and Robin Kessler, an individual, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**The STATE of FLORIDA; Lawton Chiles; Tom Gallagher; Shirley O. Gooding; Gerald A. Lewis; Broedell Plumbing Supply Inc., a Florida corporation; FCCI Mutual Insurance Company; a Florida corporation; Florida Employers**

**Insurance Service Corporation, a Florida corporation; Winn–Dixie Stores, Inc., a Florida corporation; and Crawford & Company, a Georgia corporation, on behalf of themselves and all others similarly situated, Defendants.**

No. 94–1995–Civ–T–21A.

United States District Court,
M.D. Florida,
Tampa Division.

May 10, 1995.

Alex Lancaster, Lancaster & Eure, Sarasota, FL, for plaintiffs Earl L. Cramer, Robin Kessler, individuals, and on behalf of themselves and all others similarly situated.

Stephanie A. Daniel, Gen. Counsel's Office, Dept. of Legal Affairs, Tallahassee, FL, for defendants State of Florida, Lawton Chiles, Shirley O. Gooding, Gerald A. Lewis, Tom Gallagher.

John V. Cannon, III, Williams, Parker, Harrison, Dietz & Getzen, Sarasota, FL, for defendants Broedell Plumbing Supply, Inc., a Florida corp., FCCI Mutual Ins. Co., a Florida corp., Florida Employers Ins. Service Corp., a Florida corp.

Peter W. Zinober, Zinober & McCrea, P.A., Tampa, FL, for defendants Winn–Dixie Stores, a Florida corp., Crawford & Co., a Georgia corp.

## ORDER

NIMMONS, District Judge.

This cause comes before the Court on several motions to dismiss: (1) Defendants Winn–Dixie and Crawford & Company's Motion to Dismiss Amended Complaint (Dkt. 34) and Plaintiffs' response (Dkt. 51) thereto; (2) Defendants Broedell Plumbing Supply, Inc., FCCI Mutual Insurance Company, Florida Employers Insurance Service Corporation's Motion to Dismiss Amended Complaint (Dkt. 35) and Plaintiffs' response (Dkt. 53) thereto; (3) Defendant State of Florida's Motion to Dismiss Amended Complaint (Dkt. 40) and Plaintiffs' response (Dkt. 52) thereto; and (4) Motion of Defendant, Shirley O. Gooding, to Dismiss Plaintiffs' Amended Complaint (Dkt. 58) and Plaintiffs' response (Dkt. 63) thereto.

On April 20, 1995 the Court held a hearing on the Defendants' motions to dismiss. In deciding the motions to dismiss, the Court therefore considers the pleadings and other

written submissions filed by the parties, the oral argument of counsel, and the applicable law.

The Amended Complaint (Dkt. 26) alleges that Plaintiff Cramer was employed by Defendant Broedell Plumbing Supply, Inc. as a warehouse manager loading and unloading semi-truck vehicles and performing general labor. On November 22, 1993, Cramer allegedly injured his lower back as the result of an on-the-job injury. Plaintiffs allege that Cramer was out of work approximately two weeks after his injury, and eventually returned to light-duty work with Broedell. On February 1, 1994, Cramer was taken off work totally due to his injuries. On June 27, 1994, Broedell terminated Cramer's employment. Cramer's primary treating physician opined that Plaintiff had reached maximum medical improvement and assigned him a 9% impairment rating pursuant to the requirements of § 440.15(3)(a) (Supp.1990). Plaintiffs allege that, on August 31, 1994, Cramer filed a claim for "wage-loss" benefits, pursuant to § 440.15, Florida Statutes (Supp.1990).

Plaintiff Kessler alleges that she was employed by Defendant Winn–Dixie as a deli and bakery manager, and she loaded and unloaded trucks and performed general labor. On March 18, 1994, Kessler injured her lower back, right leg, and right foot in the course of her employment. After her injury, Kessler worked light-duty, decorating cakes, for two weeks until April 6, 1994. At that time, Kessler was unable to continue working and was taken off work. Kessler's primary treating physician opined that she had reached maximum medical improvement and assigned her a 7% impairment to the body as a whole pursuant to the requirements of § 440.15(3)(a) (1993). Kessler alleges that she filed a claim for disability benefits, seeking "impairment" disability benefits, pursuant to § 440.15, Florida Statutes (1993).

In four counts, the Plaintiffs further allege that they were discriminated against on the basis of their disabilities, in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12112 *et seq.* together with 29 C.F.R. §§ 1630.4, 1630.5, 1630.7, and 1630.1. Plaintiff Earl Cramer brings this action individually and as a class representa-

tive of Plaintiffs entitled to "wage-loss" pursuant to Section 440.15 (Supp.1990). Robin Kessler brings this action individually and as a class representative of Plaintiffs entitled to disability "impairment" benefits pursuant to § 440.15 (1993). The Plaintiffs allege that by engaging in the enforcement of Florida Statutes, Sections 440.15 (Supp.1990) and 440.15 (1993) after the enactment of the ADA, Defendants have denied Plaintiffs a right to have equal eligibility for "wage-loss" and "impairment" benefits in a manner which is consistent with the ADA. The Plaintiffs seek a judgment declaring that Florida Statutes, §§ 440.15 (Supp.1990) and 440.15 (1993) are violative of the ADA.

The Defendants' motions to dismiss the Amended Complaint are primarily based on the following arguments: (1) Plaintiffs are not qualified individuals with a disability within the meaning of the ADA; (2) The ADA does not reach allegations of discrimination in the application of workers' compensation because the sole purpose of the ADA is to prevent discrimination against disabled persons as compared to non-disabled persons; (3) The ADA, like the Rehabilitation Act of 1973, does not guarantee equal benefits for disabled persons; and (4) The ADA does not preempt Florida's workers' compensation law.

### *MOTION TO DISMISS STANDARD*

It is well established that "a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim." *Cook & Nichol, Inc. v. Plimsoll Club,* 451 F.2d 505, 506 (5th Cir.1971); *accord Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). In evaluating the sufficiency of a complaint for purposes of a motion to dismiss, the allegations of the complaint must be accepted as true, *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and viewed in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## BACKGROUND

The relevant portion of the ADA for purposes of this action is Title I, 42 U.S.C. §§ 12111–12117, which governs employment. The purpose of Title I is to ensure that qualified individuals are protected from discrimination on the basis of disability. 42 U.S.C. § 12101(b)(1). The ADA defines "disability" with respect to an individual as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The ADA provides that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

■ This action also concerns Florida's workers' compensation law, Chapter 440, Florida Statutes, the purpose of which is to provide benefits to employees for work-related injuries that result in time lost from work. There are four different categories of benefits. The first two categories, temporary and permanent total disability benefits, are provided to those persons whose injuries prevent them from working for either a specific period during a recovery, or indefinitely. § 440.15(1) and (2), Florida Statutes. The benefits are calculated as a percentage of the employee's most recent salary, and are available only to persons who are not physically capable of engaging in gainful employment. *Id.*

A third category of benefits are those for persons suffering from temporary partial disabilities. § 440.15(4), Florida Statutes. Under § 440.15(4), an individual with a temporary disability that is not so severe as to prevent work completely is paid a percentage of the difference between the employee's average weekly wage and the salary he is able to earn while recovering from the temporary partial disabilities. In regard to the benefits payable under this section, the burden is on the employee to establish that any wage-loss claimed is the result of the compensable injury. § 440.14(4)(b), Florida Statutes.

Florida's workers' compensation law also provides for the benefits at issue in the instant case: "permanent impairment and wage-loss benefits." Section 440.15(3)(a), Florida Statutes (1993), one of the provisions challenged by the Plaintiffs, provides that a person with a permanent partial impairment may receive impairment benefits. The benefits depend on an assigned "percentage" of permanent impairment of the body as follows:

(a) Impairment benefits.—

1. In case of permanent impairment ... from an injury entitling the injured worker to permanent total disability benefits pursuant to subsection (1), there shall be paid to the injured worker the following:

    a. Two hundred and fifty dollars for each percent of permanent impairment of the body as a whole from 1 percent through 10 percent; and

    b. Five hundred dollars for each percent of permanent impairment of the body as a whole for that portion in excess of 10 percent.

2. Once the employee has reached the date of maximum medical improvement, impairment benefits are due and payable within 20 days after the carrier has knowledge of the impairment.

3. The three-member panel, in cooperation with the division, shall establish and use a uniform disability rating guide by January 1, 1991. This guide shall be based on medically or scientifically demonstrable findings as well as the systems and criteria set forth in the American Medical Association's Guides to the Evaluation of Permanent Impairment; the Snellen Charts, published by American Medical Association Committee for Eye Injuries; and the Minnesota Department of Labor and In-

dustry Disability Schedules. The guide shall be more comprehensive than the AMA Guides to the Evaluation of Permanent Impairment and shall expand the areas already addressed and address additional areas not currently contained in the guides. On August 1, 1979, and pending the adoption, by rule, of a permanent schedule, Guides to the Evaluation of Permanent Impairment, copyright 1977, 1971, 1988, by the American Medical Association, shall be the temporary schedule and shall be used for the purposes hereof. For injuries after July 1, 1990, pending the adoption by the division rule of a uniform disability rating guide, the Minnesota Department of Labor and Industry Disability Schedule shall be temporarily used unless that schedule does not address an injury. In such case, the Guides to the Evaluation of Permanent Impairment by the American Medical Association shall be used.

Another section challenged by the Plaintiffs is § 440.15(3)(b), Florida Statutes (Supp. 1990), which provides for the payment of wage-loss benefits where an injured worker suffered a permanent partial impairment. Wage-loss benefits under the 1990 statute are authorized where there is a showing that the permanent impairment results in a work-related physical restriction which affected the employee's ability to perform the activities of his usual or other appropriate employment. Such benefits are to be based on actual wage-loss. Pursuant to § 440.15(3)(b)4., durational limitations are imposed on the period of time during which wage-loss benefits may be claimed, such that wage-loss benefits are available longer for higher impairment ratings.

d. For injuries occurring after June 30, 1990, the employee's eligibility for wage-loss benefits shall be determined according to the following schedule:

(i) Twenty-six weeks of eligibility for permanent ratings up to and including 3 percent;

(ii) Fifty-two weeks of eligibility for permanent impairment ratings greater than 3 and up to and including 6 percent;

(iii) Seventy-eight weeks of eligibility for permanent impairment ratings greater than 6 and up to and including 9 percent;

(iv) One hundred four weeks of eligibility for permanent impairment ratings greater than 9 and up to and including 12 percent; and

(v) One hundred twenty weeks of eligibility for permanent impairment ratings greater than 12 percent and up to and including 13 percent ...

### DISCUSSION

### I. Qualified Individual with a Disability

■ The ADA only protects a "qualified individual with a disability," and it defines that term to mean an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position he or she holds or desires. 42 U.S.C. § 12111(8). Thus, in order to state a claim under the ADA, a plaintiff must first establish that he is a "qualified individual with a disability."

The Amended Complaint states that the Plaintiffs were removed from their jobs because of their injuries and their inability to perform their jobs. (¶¶ 30, 39). The Amended Complaint further states that Plaintiff Cramer "is now unable to perform a class of jobs and various ranges of jobs he was capable of performing prior to his on-the-job accident. He is substantially limited in his ability to work." Additionally, the Amended Complaint states that Plaintiff Kessler "is now unable to perform a class of jobs and various ranges of jobs she was capable of performing prior to her on-the-job-accident. She is substantially limited in her ability to work."

The Plaintiffs assert that they are now "disabled" within the meaning of 42 U.S.C. § 12102(2)(A), (B), and (C). They assert that all three provisions apply because their permanent physical impairments substantially limit one or more of their major life activities; they have a record of such impairment; and, the Defendants, their agents, and employees regard Plaintiffs as having physical impairments to the extent that they believe

Plaintiffs are unable to perform the essential functions of their jobs.

Because the above referred portions of the Amended Complaint indicate that the Plaintiffs might not satisfy the requirement that they be able to perform the essential functions of the job they seek, the Court questioned the Plaintiffs' counsel at the hearing as to their ability to perform the essential functions of the job they seek and as to what job the Plaintiffs seek. In response, Plaintiffs' counsel indicated that Plaintiffs maintain they can perform the essential functions and that they seek "any job." Counsel further stated, "Now, both the Plaintiffs seek jobs. Both the Plaintiffs are able to work." Counsel maintained that because the Plaintiffs are permanently *partially* disabled, as opposed to permanently *totally* disabled, their allegations suffice to make them "qualified individuals with a disability." Further, Plaintiffs assert that whether they are in fact "qualified individuals with a disability" is a factual determination that should be made at a later time.

In support of their argument that the Plaintiffs' case should be dismissed for failure to allege that they are qualified individuals with a disability, counsel at the hearing argued that at the date they applied for workers' compensation benefits and were denied, the Plaintiffs have alleged that they were not capable of performing their job. The Defendants thus assert that the Plaintiffs could not have been otherwise qualified at the relevant date. At the hearing, defense counsel asserted that the Plaintiffs cannot be permitted to amend the defects. Additionally, the State of Florida's memorandum asserts, "The very nature of the Workers' Compensation statute is designed to address those situations where an employee is unable to work or unable to work at his prior job and pay, because of a disability. Persons eligible for workers' compensation are not generally 'otherwise qualified' for the jobs they held prior to their disability."

■ In addressing the issue of the Plaintiffs' status as qualified individuals with a disability, the Court first notes that there is case authority for dismissing a case where the plaintiff essentially admits that he cannot perform the essential functions of the position. *See Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768, 771 (8th Cir.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988) (holding that plaintiff's admission that she cannot perform the essential functions of the job in question and that she will be unable to do so in the near future puts plaintiff outside the protection of the Rehabilitation Act). *See also Jackson v. Veterans Admin.,* 22 F.3d 277, 279 (11th Cir. 1994) (holding that summary judgment was proper where plaintiff failed to prove he was an otherwise qualified individual because he failed to satisfy the job requirement of being present daily). If the Court were ruling on the motions to dismiss on the basis of the Amended Complaint alone, without consideration of the representations at the hearing, the Court would have been inclined to dismiss the Amended Complaint with leave to amend. However, in light of the representations of Plaintiffs' counsel at the hearing, the fact that the determination of the ability to perform essential functions is generally a factual question, and the fact that the motions to dismiss may be disposed of on the basis of other grounds, the Court will assume for purposes of this Order that the Plaintiffs are qualified individuals with a disability within the meaning of the ADA. Nevertheless, the Court notes that the apparent difficulty in determining whether the Plaintiffs are qualified individuals with a disability is one factor to be considered in the ultimate rulings on the motions to dismiss.

## II. *Workers' Compensation Laws and the ADA*

■ The gravamen of the Amended Complaint is that Florida workers' compensation laws, by using the concept of "impairment," rather than "disability," violate the ADA, because persons with lesser impairment ratings, and thus lower benefits, may be more disabled than persons with higher impairment ratings. The Plaintiffs assert that the ADA does not allow benefits to disabled persons to be denied, segregated, or classified in a discriminatory manner. Plaintiffs' theory necessarily assumes that the ADA is violated when there is "discrimination" between two

disabled persons by favoring one disabled person over another. The Court finds, however, that the ADA does not apply to this scenario. Rather, in light of the differing purposes of the ADA and workers' compensation, together with Supreme Court precedent in analogous cases, the Court finds that the ADA applies only to discrimination against disabled persons compared to non-disabled persons.

The ADA was designed to prohibit employment decisions made because of fear, prejudice, and stereotypes, to require employers to make individualized determinations as to an individual's qualifications, and to require employers to consider an employee or job applicant's abilities, rather than his disabilities. EEOC Interpretive Guidance to Title I, Appendix to 29 C.F.R. Part § 1630. The Defendants thus assert that the purpose of the ADA is to protect those individuals who have some permanent or chronic disability, who are able and have the desire to work, but due to stereotype, fear, misconception, or medical history, would otherwise needlessly be prevented from working.

■■■ Workers' compensation, by contrast, was designed to protect workers and their dependents against the hardships that arise from a workers' injury or death arising out of and in the course of employment. *McCoy v. Florida Power & Light Co.*, 87 So.2d 809 (Fla.1956). Under workers' compensation, an injured employee receives timely benefits in exchange for forfeiting a common law right to sue for the injury, and the employer benefits by receiving immunity from common law tort actions in exchange for accepting liability that is limited and determinate regardless of fault. *McLean v. Mundy*, 81 So.2d 501 (Fla.1955). Further, the Florida Legislature has indicated that workers' compensation is "based on mutual renunciation of common law rights and defenses" in order to establish a scheme to

"assure the quick and efficient delivery of disability and medical benefits." § 440.15, Florida Statutes (1993). Eligibility for workers' compensation benefits requires a finding of partial or complete inability to work, and the benefits seek to compensate specifically for lost ability to work. The Defendants therefore assert that workers' compensation is a benefit given to workers in addition to the rights afforded to individuals under the ADA because it protects workers precisely when they are not protected by the ADA.

■■■ The Supreme Court's decision in *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) is instructive. There, the plaintiffs brought a class action challenging the state of Tennessee's statutory framework for paying Medicaid benefits, alleging that limitations imposed by Tennessee violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*[1] Tennessee had reduced the number of inpatient hospital days per year per patient. The plaintiffs argued that the limitation to 14 days had a disproportionate discriminatory impact on disabled individuals and that any limitation on the number of days would be discriminatory. The Supreme Court reversed the Sixth Circuit's conclusion that "any action by a federal grantee that disparately affects the handicapped states a cause of action under § 504 and its implementing regulations." *Id.* at 292, 105 S.Ct. at 715. The Supreme Court found that, assuming that § 504 or its implementing regulations reaches some claims of disparate-impact discrimination, Tennessee's reduction in annual inpatient coverage is not among them. *Id.* at 309, 105 S.Ct. at 724. The Court reasoned that the Rehabilitation Act "does not ... guarantee the handicapped equal results from the provision of state Medicaid, even assuming some measure of equality of health could be constructed." *Id.* at 304, 105 S.Ct. at 722.

---

1. Rehabilitation Act cases are regarded as authorities for interpreting the ADA. *See e.g., Sawinski v. Bill Currie Ford, Inc.*, 866 F.Supp. 1383, 1385–86 (M.D.Fla.1994) (finding that the legislative history of the ADA clearly indicates that Congress intended that the terms and regulations issued under the ADA track those of the Rehabilitation Act of 1973 and citing the Interpretive Guidance on Title I of the ADA, wherein the EEOC stated, "The range of employment decisions covered by this nondiscrimination mandate is to be construed in a manner consistent with the regulations implementing section 504 of the Rehabilitation Act of 1973."); *see also Vande Zande v. State of Wisconsin Dept. of Administration*, 44 F.3d 538, 542 (7th Cir.1995).

In *Traynor v. Turnage*, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), the Supreme Court considered whether the Veterans' Administration's characterization of the "willful misconduct" provision of the Veterans' Readjustment Benefit Act of 1966 violated the Rehabilitation Act. At issue were educational benefits that were required to be used within a ten-year period unless the individual was prevented from using his benefits earlier due to a "physical or mental disability which was not the result of [his] own misconduct." *Id.* at 538, 108 S.Ct. at 1376. The petitioners were honorably discharged veterans who had not used their educational benefits during the decade following their military service and sought to receive an extension beyond the ten-year period on the grounds that they had been disabled by alcoholism. The Veterans' Administration determined that alcoholism constituted "willful misconduct" and thus the petitioners were not entitled to an extension. *Id.* The Supreme Court found that the statutory provision challenged by the petitioners treats disabled veterans more favorably than able-bodied veterans. *Id.* at 548, 108 S.Ct. at 1381–82. As the Court explained, the former were able to obtain extensions of time in which to use their educational benefits so long as they did not become disabled as a result of their own "willful misconduct"; the latter were absolutely precluded from obtaining such extensions. *Id.* at 548–49, 108 S.Ct. at 1381–82. The Supreme Court's findings are significant:

> First, the 'willful misconduct' provision does not undermine the central purpose of § 504, which is to assure that handicapped individuals receive 'evenhanded treatment' in relation to nonhandicapped individuals. This litigation does not involve a program or activity that is alleged to treat handicapped persons less favorably than nonhandicapped persons ...

> There is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons.

*Id.* at 548–49, 108 S.Ct. at 1382 (citations omitted).

Other courts have followed the reasoning in *Traynor*. In *Easley v. Snider*, 36 F.3d 297 (3rd Cir.1994), for example, the Third Circuit considered an attack on the legality of the Pennsylvania Attendant Care Services Act (Care Act). The Court found that the Care Act did not discriminate against the mentally disabled, but rather focused on a different class of handicapped. *Id.* at 304. The Court stated:

> Our reading of the Care Act is not inconsistent with the ADA and the Rehabilitation Act. The regulations implementing these acts contemplate reaching groups of disabled without incurring obligations to other groups of handicapped. Cases interpreting the Rehabilitation Act have stated that their main thrust is to assure handicapped individuals receive the same benefits as the non-handicapped.

*Id.* at 305, *citing Traynor*, 485 U.S. at 548, 108 S.Ct. at 1381–82. Similarly, the Second Circuit considered a case in which the plaintiff, an individual with a handicap, alleged that he was denied educational, residential and other services that have been made available to other handicapped individuals, solely on the basis of his handicap. *P.C. v. McLaughlin*, 913 F.2d 1033, 1041 (2nd Cir. 1990). The Court noted that "the law governing § 504 did not clearly establish an obligation to meet the plaintiff's particular needs vis-a-vis the needs of other handicapped individuals, but mandated only that services provided nonhandicapped individuals not be denied the plaintiff because he is handicapped." *Id.* at 1041. Further, another district court has followed the *Traynor* reasoning in dismissing a case in which the plaintiff alleged that the federal Foreign Service Benefit Plan discriminated against the plaintiff and other mentally disabled participants by "allot[ing] benefits for mental illness that are unequal to benefits for any other illness." *Modderno v. King*, 871 F.Supp. 40, 42–43 (D.D.C.1994).

The *Traynor* analysis has also been followed in the specific context of the ADA by the Supreme Court of Massachusetts, wherein the court stated:

> The focus of Federal disability discrimination statutes is to address discrimination

in relation to nondisabled persons, rather than to eliminate all differences in levels or proportions of resources allocated and services provided to individuals with differing types of disabilities ... If the ADA carried with it the mandate that the plaintiffs would require, then the DMH, in providing any service for any group of the mentally disabled, would be required to provide the same services to other individuals with different mental disabilities. Nothing in the language of the ADA indicates that Congress intended that result.

*Williams v. Secretary of the Exec. Office of Human Serv.,* 414 Mass. 551, 609 N.E.2d 447, 454 (1993). *See also Easley, supra.*

Similar to the plaintiffs in *Choate* and *Traynor,* the Plaintiffs in the instant case are seeking a determination that the federal law requires that benefits extended to one category of individuals with disabilities be extended to all other individuals with disabilities. The Plaintiffs allege that § 440.15 (Supp.1990) and § 440.15 (1993) "arbitrarily use standards and criteria which discriminate against, 'disparately impact' and 'disparately treat' disabled persons with a low impairment rating *in favor of other disabled persons* with a higher impairment rating. Such standards, criteria and methods for determining eligibility for 'wage loss' and 'impairment' disability benefits perpetuate discriminatory practices against Plaintiffs." (Dkt. 26, emphasis added). In response to the Defendants' argument based upon the *Traynor* analysis, the Plaintiffs attempt to distinguish and refute *Traynor* as authority in this case, but do not deal with the basic principle of that opinion and cite no authorities. The Plaintiffs have thus failed to persuade this Court that the Florida workers' compensation statute violates the ADA by discriminating against people with a lesser impairment rating who are significantly disabled, in favor of persons with a higher impairment rating who may or may not be "as disabled" as the Plaintiffs, or may not be disabled at all. The Plaintiffs' argument does not escape the reasoning of *Traynor* that disability statutes do not ensure "evenhanded treatment" as compared to other disabled persons.

Laws such as the Florida workers' compensation statute at issue in this case are expressly addressed and permitted under the ADA. Section 501(b) of the ADA provides in pertinent part:

Nothing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this Act.

42 U.S.C. § 12201(b). The Defendants argue that workers' compensation is a benefit given to workers in addition to the rights afforded individuals under the ADA because it protects workers when they are unable to work or to maintain full or appropriate employment. Thus, the Defendants assert that workers' compensation provides greater protection than the ADA within the meaning of the above provision, and is not, therefore, preempted by the ADA.

In light of the Court's analysis and conclusions above regarding the allegations that certain provisions of Florida workers' compensation are discriminatory, the Court finds that the Florida workers' compensation statute provides protection at least equal to that of the ADA with regard to individuals with a disability. Although workers' compensation statutes would violate the ADA if they somehow discriminated against individuals with a disability as opposed to non-disabled individuals, such a statute is not at issue here. The provisions of the Florida workers' compensation statute at issue here do not make any distinction between individuals with a disability and non-disabled individuals and, as the purposes and effect of the workers' compensation system demonstrates, workers' compensation provides different and complementary protection to injured workers.

Upon consideration of the foregoing, it is hereby **ORDERED and ADJUDGED that:**

(1) Defendants Winn–Dixie and Crawford & Company's Motion to Dismiss Amended Complaint (Dkt. 34) is **GRANTED.**

(2) Defendants Broedell Plumbing Supply, Inc., FCCI Mutual Insurance Company,

Florida Employers Insurance Service Corporation's Motion to Dismiss Amended Complaint (Dkt. 35) is **GRANTED.**

(3) Defendant State of Florida's Motion to Dismiss Amended Complaint (Dkt. 40) is **GRANTED.**

(4) Motion of Defendant, Shirley O. Gooding, to Dismiss Plaintiffs' Amended Complaint (Dkt. 58) is **GRANTED.**

(5) This case is **DISMISSED,** and all pending motions are **DENIED as moot.**

**DONE AND ORDERED.**