**Chris DOE, Advocacy Center for Persons with Disabilities, Inc., and the American Civil Liberties Union of Florida, Inc., Plaintiffs,**

v.

**Dr. Carlos E. STINCER, Dr. Hugo Gonzalez, Mercy Hospital, and Bob Butterworth, Attorney General for the State of Florida, Defendants.**

No. 96–2191–CIV–MORENO.

United States District Court,
S.D. Florida.

Dec. 2, 1997.

James K. Green, West Palm Beach, FL, Susan Stefan, Coral Gables, FL, for Plaintiffs.

·Scott A. Masel, Office of the Attorney General, Ft. Lauderdale, FL, Bradley H. Trushin, Wolpe & Leibowitz, Miami, FL, Lewis W. Fishman, Attorney for Mercy Hospital, Dr. Carlos A. Stincer, Miami, FL, David Dittmar, Ditmer & Hauser, Coconut Grove, FL, Bradley H. Trushin, Wolpe & Leibowitz, LLP, Miami, FL, for Defendants.

### MEMORANDUM OPINION

MORENO, District Judge.

Plaintiff The Advocacy Center for Persons With Disabilities, Inc. moves for summary judgment against Defendant Bob Butterworth, contending that Florida Statutes section 395.2035(2) is preempted by Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* The Court finds that the statute improperly discriminates against the mentally disabled and thus is preempted by the ADA.

### LEGAL STANDARD

Summary judgment is authorized when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### THE PARTIES

The Advocacy Center for Persons with Disabilities, Inc. ("Advocacy Center"), is a Florida not-for-profit corporation and agency established under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801, *et seq.*, and Protection and Advocacy of Individual Rights Act ("PAIR"), 29 U.S.C. § 796(g). Defendant Bob Butterworth is the Attorney General of the State of Florida and thus is responsible for defending the laws of the State of Florida. Plaintiff the Advocacy Center brings this suit against Bob Butterworth as Attorney General for the State of Florida for declaratory and injunctive relief claiming that section 395.3035(2), Florida Statutes, is preempted by Title II of the ADA, 42 U.S.C. § 12131, *et seq.*

### THE FLORIDA STATUTE

Florida provides discharged patients a legal right of access to medical records:

(1) Any licensed facility shall, upon written request, and only after discharge of the patient, furnish, in a timely manner, without delays for legal review, to any person admitted therein for care and treatment or treated thereat .... a true and correct copy of all patient records, ... which records are in the possession of the licensed facility, provided the person requesting such records agrees to pay a charge.... The licensed facility shall further allow any such person to examine the original records in its possession ... upon such reasonable terms as shall be imposed to assure that the records will not be damaged, destroyed, or altered.

Fla. Stat. § 395.3025. However, individuals with mental or emotional conditions ("mental health conditions") are excluded from this right of access:

(2) This section does not apply to ... records of treatment for any mental or emotional condition at any other licensed facility which are governed by the provisions of s. 394.4615 [the Baker Act].

*Id.* § 395.3025(2). There is no legislative history explaining this statutory exemption, which contains no pre-requisites nor mechanisms for appeal.

## THE AMERICANS WITH DISABILITIES ACT

The ADA is intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). Title II of the ADA prohibits discrimination by public entities, including states, on the basis of disabilities:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

## AN OVERVIEW OF THE PREEMPTION DOCTRINE

Any state law that conflicts with federal law is preempted by the federal law and is without effect under the Supremacy Clause of the Constitution. *Lewis v. Brunswick Corp.*, 107 F.3d 1494, 1500 (11th Cir.1997), *petition for cert. filed*, No. 97–288 (Aug. 13, 1997) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). The intent of Congress is the touchstone of preemption analysis, and may be revealed in several ways:

> (1) "express preemption," in which Congress defines explicitly the extent to which its enactments preempt state law;
>
> (2) "field preemption," in which state law is preempted because Congress has regulated a field so pervasively, or federal law touches on a field implicating such a dominant federal interest, that an intent for federal law to occupy the field exclusively may be inferred; and
>
> (3) "conflict preemption," in which state law is preempted by implication because state and federal law actually conflict, so that it is impossible to comply with both, or state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* (citations omitted).

## THE PARTIES' POSITIONS

Plaintiff the Advocacy Center contends that Defendant Bob Butterworth, as Attorney General for the State of Florida, "violates" Title II of the ADA by enforcing the statutory exemption to patients' universal right of access to all patient records. According to the Plaintiff, section 395.3025(2), Florida Statutes, is defective in that it excludes individuals with mental disabilities from all other individuals who have a legal right of access to their medical records and imposes added burdens on individuals with mental disabilities seeking access to their treatment records.

The Defendant challenges the Plaintiff's standing to bring these claims and contends, without providing any analysis, that "the statute challenged by the Plaintiff does not seem to be a 'service' or programs or activity provided' by the state as intended by Title II of the ADA." The Defendant also argues that the Florida statute is sustainable because, although it creates a different structure for individuals with physical disabilities than for those with mental disabilities, the ADA does not require that a benefit extended to one category of handicapped persons be extended to all other categories of handicapped persons. Finally, the Defendant contends that the Florida statute is valid because it provides neutral criteria that are necessary to preserve Florida's legislative scheme for allowing mental health professionals the ability to gauge the impact of medical record access on their patients' treatment.

## DOES THE ADVOCACY CENTER HAVE STANDING TO RAISE THESE CLAIMS?

■ The Advocacy Center for Persons With Disabilities, Inc., argues that it has standing to bring this claim under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801, *et. seq.* Congress enacted the PAIMI:

> (1) to assure that the rights of individuals with mental illness are protected; and
>
> (2) to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will

(A) protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes. . . .

42 U.S.C. § 1801(b). Funding for the program is controlled by the Secretary of Health and Human Services, who is required to "make allotments" to "eligible systems and to establish and administer systems" which are, *inter alia,* "designed to protect and advocate the rights of individuals with mental illness." *Id.* § 10803. An eligible system may use the federal allotment to enter into contracts with State agencies and nonprofit organizations who have the capacity to protect and advocate the rights of individuals with mental illness. *Id.* § 10804(a)(1)(B). Although the Plaintiff has submitted no evidence that would affirmatively establish that it is an established system within the meaning of the Act, the Court will assume that the State of Florida designated the Advocacy Center for Persons with Disabilities as the PAIMI system, and that the Advocacy Center receives federal funds to carry out its mandate.[1]

The PAIMI imposes a number of requirements on systems receiving federal funds. A system established to protect and advocate the rights of individuals with mental illness has the authority to, *inter alia:*

(B) pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State; and

(C) pursue administrative, legal, and other remedies on behalf of an individual who

(I) was a(sic) individual with a mental illness; and

(ii) is a resident of the State,

but only with respect to matters which occur within 90 days after the date of the discharge of such individual from a facility providing care or treatment. . . .

*Id.* § 10805(a)(1).

The Advocacy Center brings its claim under 42 U.S.C. § 10805(a)(1)(B) to ensure the protection of individuals with mental illness who are receiving care or treatment in the State.[2] Although the Eleventh Circuit has not had occasion to address this statute, the Court agrees with the overwhelming weight of authority and concludes that the Advocacy Center has standing to raise the allegations contained in the Amended Complaint. *See, e.g., Larkin v. State of Michigan Dept. of Social Services,* 89 F.3d 285 (6th Cir.1996) (affirming, without discussing, the lower court's grant of the Michigan Protective and Advocacy Services' "motion to intervene as of right on the ground that it had a federal mandate to protect the rights of the handicapped"); *Michigan Protection and Advocacy Service, Inc. v. Miller,* 849 F.Supp. 1202, 1206 (W.D.Mich.1994) (the Plaintiff "clearly has legal authority to protect and advocate the rights of all individuals in state facilities who suffer developmental disabilities or mental illness"); *E.K. v. New York Hospital–Cornell Medical Center,* 158 Misc.2d 334, 600 N.Y.S.2d 993, 995 (Sup.Ct. 1992); *Rubenstein v. Benedictine Hospital,* 790 F.Supp. 396, 408–09 (N.D.N.Y.1992) (broad remedial pur-

---

1. This factual statement is not disputed by the Defendant. However, the Plaintiff shall provide the requisite proof no later than ten days of entry of this order.

2. The Advocacy Center specifically does not bring its claim under 42 U.S.C. § 10805(a)(1)(C), and indeed, could not bring its claim on behalf of Chris Doe, the only named individual Plaintiff. Although Chris Doe was "involuntarily confined in a municipal detention facility for reasons other than serving a sentence resulting from conviction for a criminal offense," Chris Doe was not an individual with a mental illness because she did not and does not have "a significant mental illness or emotional impairment, as determined by a mental health professional qualified under

the laws and regulations of the State." *Id.* § 10802(4)(A)(B). Although the ADA includes those whom are "perceived" as having a disability within the definition of "disabled," *see* 42 U.S.C. § 12102(2)(B)(C); 28 C.F.R. § 35.104, the PAIMI contains no similarly inclusive provision in its definition of "individuals with mental illness." In any event, although Chris Doe was allegedly denied access to her mental health records because of the statutory exception, the Advocacy Center could not bring a claim on her behalf because she was discharged from Mercy Hospital in early 1994, which was more than 90 days prior to the filing of the original Complaint in mid–1996. *See* 42 U.S.C. § 10805(a)(1)(C).

poses of the PAIMI grant Plaintiff Disability Advocates, Inc. standing to seek an injunction enjoining the involuntary commitment of individuals found not to have a present mental illness).

### DOES THE ADA PROVIDE SUBJECT MATTER JURISDICTION FOR THESE CLAIMS?

Whether the statutory access to medical records is a "service, program, or activity" under Title II of the ADA is unclear. The ADA does not define these terms, the Court has uncovered no Eleventh Circuit authority which sheds light on this issue, and decisions from other Circuits are similarly sparse. However, this issue is academic because Title II's anti-discrimination provision contains "catch-all" language that "prohibits all discrimination by a public entity, regardless of the context." *Innovative Health Systems, Inc. v. City of White Plains,* 117 F.3d 37, 44 (2d Cir.1997).

### MAY FLORIDA DISCRIMINATE BETWEEN DISABILITIES?

In their briefs, the parties argue at great length whether a state may exclude a category of individuals with disabilities from a benefit that is extended to all other individuals with disabilities. Although the Supreme Court appears to have spoken on this issue, *see Traynor v. Turnage,* 485 U.S. 535, 538, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988) ("There is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons"),[3] the lower courts are divided. *See, e.g., Modderno v. King,* 82 F.3d 1059 (D.C.Cir.1996) (the Rehabilitation Act cannot forbid insurance policies that leave the physically disabled better off and the mentally disabled worse off—"distinctions between mental and physical care" are not "vulnerable"); *Wagner by Wagner v. Fair Acres Geriatric Center,* 49 F.3d 1002, 1016 n.

15 (3d Cir.1995) ("While [the Rehabilitation Act] does not apply to programs choosing among similarly handicapped people, an action under [the Rehabilitation Act] exists if a program is found to discriminate between distinct classes of handicapped persons"); *Helen L. v. DiDario,* 46 F.3d 325 (3d Cir. 1995) ("If Congress were only concerned about disparate treatment of the disabled as their nondisabled counterparts, this statement would be a non sequitur as only disabled persons are institutionalized" and the ADA states that "disability persists in such critical areas as ... institutionalization"); *Cramer v. Florida,* 885 F.Supp. 1545 (M.D.Fla.1995) ("the Court finds that the ADA applies only to discrimination against disabled persons compared to non-disabled persons," particularly in view of the Supreme Court's conclusion in *Traynor* that "disability statutes do not ensure 'evenhanded treatment' as compared to other disabled persons").

■ There is merit to the Plaintiff's argument that *Traynor* did not create a bright line rule, but is rather limited to cases involving health insurance and disability benefits and cases where a government program targeted at providing services specifically needed by a certain population of disabled individuals is not required by all disabled individuals. However, this Court need not reach that issue because the Florida statute does more than distinguish between the mentally and physically disabled, the statute excludes everyone who has received treatment for a "mental or emotional condition" from the universe of all patients, including the non-disabled. Furthermore, although it is not necessarily the case that an individual who received treatment for a "mental or emotional condition" is disabled as that term is defined in the ADA, the statute has the practical effect of excluding individuals with mental disabilities from all other individuals who enjoy this statutory right. This directly contradicts the relevant Department of Justice regulations, which state:

---

**3.** *Duckett v. Dunlop Tire Corp.,* 120 F.3d 1222, 1225 n. 1 (11th Cir.1997) ("[C]ourts have univer-

sally looked to Rehabilitation Act cases as a source of guidance when construing the ADA").

A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be **necessary** for the provision of the service, program, or activity being offered. A public entity may impose neutral rules and criteria that screen out, or tend to screen out, individuals with disabilities if the criteria are necessary for the safe operation of the program in question.

28 C.F.R. 35.130(b)(8) (emphasis added). Since regulations promulgated by the Department of Justice interpreting the ADA are entitled to considerable weight, *see Kornblau v. Dade County,* 86 F.3d 193, 194 (11th Cir.1996), the statutory exception is preempted by the ADA unless the Defendant can establish its necessity.

### *IS THE STATUTORY SCHEME NECESSARY?*

The Defendant bears the burden of establishing the necessity of the otherwise discriminatory statute, particularly since the Department of Justice has cautioned that "[s]afety requirements must be based on actual risks and not on speculation, stereotypes, or generalizations about individuals with disabilities." 28 C.F.R. Ch.1, Part 35, App.A (July 1, 1994) (analyzing § 35.130(b)(8)). The Defendant contends that the statutory exemption is necessary because uninhibited access to "records of treatment for any mental or emotional condition" will negatively impact the well-being and treatment of individuals with mental health conditions. According to the Defendant, the statutory exemption ensures that mental health patients are provided access to their medical records only when treatment professionals determine that such access would not undermine their treatment. However, the Defendant's alleged justification is not only unsupported by the facts in the record, it is insufficient as a matter of law.

There is no evidence that the exemption is "necessary for the safe operation" of a program unquestionably designed to provide patients with access to their medical records. The Defendant's position is primarily supported by the affidavit of Dr. Thomas Macaluso, a psychiatrist. Although Dr. Macaluso bases his opinion on his "training, judgment, and experience as a practicing psychiatrist," his opinion is speculative and conclusory. Dr. Macaluso does not claim that he has personal experience either providing or denying access to mental health records, he does not claim that he has discussed this issue with any of his medical colleagues, and he does not claim to have relied on any studies or research in formulating his opinion.

The Plaintiff, on the other hand, submits the affidavit of Dr. Robert M. Factor, a clinical psychologist with eighteen years of clinical experience. Based on his personal experience granting more than eight hundred patients access to their medical records, Dr. Factor concludes that no negative consequences result from patient access to mental health records. Dr. Factor also contends that his medical colleagues have never informed him of any negative consequences resulting from such access. Most importantly, Dr. Factor formed his opinion on this issue only after examining the extensive, well-documented research literature, which the Court agrees, after conducting an independent examination of the cited authority, uniformly supports his conclusion. Without evidence in the record establishing the necessity for the statutory exemption, the Defendant may not impose an extra burden on discharged patients seeking access to their records simply because they received mental health treatment.

Had the Defendant established the necessity of allowing mental health providers the discretion to deny requests for mental health records where the alternative would be inhibited treatment, the overly-broad statute would still not be necessary to achieve this effect. The statute grants a licensed facility unbridled discretion to deny a patient's request for mental health records: both disabled and non-disabled patients may lawfully

be denied access to their treatment records.[4] In addition, disabled patients may lawfully be denied access to their mental health records even if their mental health provider does not believe that access would affect their treatment. The statute is this overbroad and not "necessary" to accomplish the assumed statutory goal. Finally, the statutory structure enforced by the Defendant is not saved by the fundamental alteration defense because the statute creates a barrier to access that discriminates against all individuals who receive treatment for any mental or emotional condition.

### CONCLUSION

Therefore, because section 395.3025(2), Florida Statutes, "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of Title II of the ADA, *see Lewis*, 107 F.3d at 1500, the state law is preempted by implication. Effective ten days from entry of this order, Defendant Bob Butterworth, Attorney General for the State of Florida, is permanently enjoined from enforcing section 395.3025(2), Florida Statutes, and is further enjoined from promulgating any regulation, rule, policy, procedure, practice or guideline which is based on or relies upon section 395.3025(2), Florida Statutes.

4. Plaintiff Chris Doe, for example, was denied access to her mental health records despite the doctor and hospital Defendants' vigorous contention that she is neither disabled nor perceived as being disabled.