Robert J. BERNINGER, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (EAST HEMPFIELD TOWNSHIP), Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2000.

Decided Oct. 30, 2000.

James A. Nettleton, Jr., Lancaster, for petitioner.

William C. McCarty, Lancaster, for respondent.

BEFORE: DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, KELLEY, Judge, FLAHERTY, Judge.

McGINLEY, Judge.

Robert J. Berninger (Claimant) petitions for review from the order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of the Workers' Compensation Judge (WCJ) that dismissed Claimant's claim petition.

Claimant worked as a police officer for East Hempfield Township (Employer). Claimant was unable to perform his official duties after January 9, 1998, due to psychological problems. Because of Claimant's attention deficit disorder, Employer accommodated him by assignment to a steady shift rather than a rotating shift.

Claimant petitioned for benefits on the basis that he could not possibly perform his duties as a police officer, that he was depressed and "burned out" from the stress of the job, and also because of his attention deficit disorder. Employer answered and denied all allegations. Specifi-

cally, Employer asserted that, assuming arguendo, Claimant's allegations were true, none of the complained of conditions were causally related to Claimant's employment.

The WCJ held a hearing on June 4, 1998. Employer moved to dismiss. The parties stipulated that Claimant's disability was not caused by any specific incident or by abnormal working conditions. No testimony was taken. On or about October 5, 1998, the WCJ dismissed the petition on the basis that Claimant failed to establish that abnormal working conditions caused the work-related stress. The WCJ made the following relevant findings of fact:

2. The Claimant is asserting a psychic injury.

3. The Claimant will stipulate that he was not subjected to any abnormal working conditions or duties.

4. The Claimant suffers from a pre-existing condition and his current problems are due to a subjective reaction to normal working conditions.

WCJ's Decision, October 5, 1998, Findings of Fact Nos. 2–4 at 1.

Claimant appealed to the Board and alleged that the dual burden of proving that he was subjected to abnormal working conditions and then suffered a psychic injury as a result of the abnormal working conditions when asserting a mental/mental claim contravenes the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, and that the dual burden standard impinges upon his right to equal protection guaranteed by the United States and Pennsylvania Constitutions. The Board affirmed on the basis that Claimant did not establish that he was subjected to abnormal working conditions. The Board did not address the constitutional issue as it was beyond its purview.

Initially, Claimant contends that the ADA invalidated the dual burden imposed upon him to establish a mental/mental claim.[1] Our Pennsylvania Supreme Court has held:

[T]here is a degree of uncertainty in any employment situation, as in life itself, such that an employee's individual, subjective reaction to these ordinary vicissitudes is not the type of condition which the legislature intended to require compensation for because it is not, in the common understanding, an injury.... In the absence of more definitive guidance, we conclude that it is in the nature of the injury asserted, not the presence or absence of physical symptoms that is controlling. Accordingly, we hold that the standard to be applied to claims for workers' compensation benefits when the claimant asserts a psychic injury that has manifested itself through psychic and physical symptoms is the same standard that we articulated in Martin: such a claimant must prove by objective evidence that he has suffered from a psychic injury and that the psychic injury is other than a subjective reaction to normal working conditions.

*Davis v. Workmen's Compensation Appeal Board (Swarthmore Borough)*, 561 Pa. 462, 751 A.2d 168, 177 (2000).

Here, Claimant admits that he did not meet this burden. However, Claimant asserts that this burden violates the ADA because it requires a mentally impaired individual to meet a greater burden than an employee who is physically injured because the physically injured employee must only show that he was injured in the course and scope of his employment. The ADA defines disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

1. Our review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth. 15, 589 A.2d 291 (1991).

(B) a record of such an impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102. With respect to discrimination, the ADA provides:

(a) General Rule—No covered entity shall discriminate against a qualified individual with disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112.

Claimant considers himself disabled within the meaning of the ADA. Assuming that Claimant is disabled, which was not established of record, we disagree that the mental/mental standard violates the ADA. While this is a case of first impression before this Court, the issue has been judicially addressed.

In *Cramer v. Florida*, 885 F.Supp. 1545 (M.D.Fla.1995), *affirmed*, 117 F.3d 1258 (11th Cir.1997), two plaintiffs filed a class action suit in federal court challenging the wage loss and impairment sections of Florida's workers' compensation statute as violative of the ADA. The plaintiffs alleged that the statute used impairment as the determining factor for assessing the level of benefits to which an injured employee is entitled instead of disability and as a result the statute violated the ADA because persons with lower impairment ratings may be more disabled than persons with higher impairment ratings but still receive less benefits. *Cramer*, 885 F.Supp. at 1551. The District Court held that "in light of the differing purposes of the ADA and workers' compensation, together with Supreme Court precedent in analogous cases[2], the Court finds that the ADA applies only to discrimination against disabled persons compared to non-disabled persons." *Id.* The District Court also determined that the Florida workers' compensation statute was expressly and specifically addressed at Section 501(b) of the ADA which provides in pertinent part:

Nothing in this chapter shall be construed to invalidate or limit the remedies, rights and procedures of any Federal law or law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this Act.

42 U.S.C. § 12201(b). The District Court determined that the Florida statute provided protection at least equal to that of the ADA with regard to individuals with a disability. *Cramer*, 885 F.Supp. at 1552.

■ Without addressing whether the Workers' Compensation Act (Act)[3] provides equal or even greater protection for the rights of individuals with disabilities than are afforded by the ADA, we find instructive the District Court's reasoning that the ADA only applies to discrimination between non-disabled and disabled persons. Therefore, we find that the men-

---

**2.** The District Court relied on *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) in which the Supreme Court held that Tennessee's statutory framework for paying Medicaid benefits did not violate Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., which was the precursor to the ADA, where Tennessee reduced the number of inpatient hospital days per year per patient which allegedly had a disproportionate impact on the disabled. The Supreme Court reasoned that the Rehabilitation Act "does not guarantee the handicapped equal results from the provision of state Medicaid even assuming some measure of equality of health could be constructed." *Choate*, 469 U.S. at 304, 105 S.Ct. 712. Similarly, in *Traynor v. Turnage*, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1998), the United States Supreme Court reasoned that the Rehabilitation Act did not require that any benefit extended to one category of handicapped persons must be extended to all other categories of handicapped persons when it found that a provision of the Veterans Readjustment Benefit Act of 1966 violated the Rehabilitation Act.

**3.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

tal/mental standard for establishing a psychic injury does not violate the ADA even though it is a different standard than that required to prove a physical injury.[4] The Act distinguishes between types of disability not between disabled and non-disabled individuals. The ADA does not invalidate the dual burden imposed upon a mental/mental claimant.

■■■ Claimant next contends that the dual burden denies him equal protection and is unconstitutional under the Fourteenth and Fifth Amendments to the United States Constitution and under the Pennsylvania Constitution, Article I, §§ 11 and 26 and Article III, § 18.[5]

Courts have devised three general levels of scrutiny for Equal Protection Clause challenges. The highest level, known as strict scrutiny, applies to legislative classifications infringing upon fundamental rights, such as free speech, and to those which are inherently suspect because they inordinately burden a group of citizens traditionally victimized by discrimination, for instance racial minorities....

Under this scrutiny, a classification will not pass constitutional muster unless it is necessary to advance a compelling state interest.... The next level, termed middle-level or intermediate scrutiny, applies to classifications affecting less fundamental rights, such as commercial speech, and to classifications which are not quite so suspect.... When this test applies, a classification must serve an important government interest.... The third level, employing the least scrutiny, is the rational relationship test. It applies to all other legislative classifications, for example those implicating economic rights. This minimal scrutiny upholds classifications unless they are patently arbitrary and lack any rational relationship to a legitimate government interest. (Citations omitted).

*Lyles v. City of Philadelphia,* 88 Pa. Cmwlth. 509, 490 A.2d 936, 940–941 (1985), *affirmed,* 512 Pa. 322, 516 A.2d 701 (1986).

Claimant contends that his case must be reviewed under the strict scrutiny stan-

4. Claimant relies on a footnote in this Court's opinion in *Hershey Chocolate Co. v. Workmen's Compensation Appeal Board (Lasher),* 162 Pa.Cmwlth. 23, 638 A.2d 336 (1994), *reversed,* 546 Pa. 27, 682 A.2d 1257 (1996) which addressed the mental/mental standard and stated:

We also note that the dual standard clearly violates the Americans With Disabilities Act, 42 U.S.C. §§ 12101–12213. This court, however, cannot raise said violation *sua sponte,* pursuant to the Pennsylvania Supreme Court's decision in *Dept. of Transportation, Bureau of Driver Licensing v. Boros,* 533 Pa. 214, 620 A.2d 1139 (1993). We agree with Employer that this footnote was dicta and the issue of ADA applicability was not before this Court.

5. With respect to the constitutional issue, Employer asserts that this was waived because Claimant did not raise it before the Board. It is true that Claimant did not raise the issue in his notice of appeal to the Board from the WCJ's findings of fact and conclusions of law, but Claimant asserts that he raised the issue in his brief to the Board. Claimant's brief to the Board is not a part of the record of this case. The Board then stated in its opinion

that "Furthermore, Claimant argues that, as applied, the dual burden standard impinges upon his equal protection under the law, as guaranteed by the United States and Pennsylvania Constitutions. However, due process constitutional arguments and ADA arguments are beyond the purview of this Board." Board Opinion, October 7, 1999, at 3. This Court has noted our Pennsylvania Superior Court's statement that "it is beyond cavil that an appellate court is limited to considering only those facts which have been duly certified in the record on appeal. For purposes of appellate review, what is not of record does not exist. It is the appellant's responsibility to provide a complete and comprehensive record to the reviewing court." *Steglik v. Workers' Compensation Appeal Board (Delta Gulf Corp.),* 755 A.2d 69, 74 n. 3 (Pa.Cmwlth. 2000), *quoting Spink v. Spink,* 422 Pa.Super. 126, 619 A.2d 277, 280 n. 1 (1992). Nevertheless, because the Board acknowledged the constitutional issue in its opinion, we believe that Claimant adequately raised and preserved the issue, and we will address it. We note that the Board has no jurisdiction to determine the constitutional validity of its own enabling legislation. *Ruszin v. Dept. of Labor & Industry, Bureau of Workers' Compensation,* 675 A.2d 366 (Pa.Cmwlth.1996).

dard because a suspect classification has been created and a fundamental right has been burdened. Claimant asserts that the House report that accompanied the ADA stated the purpose of the ADA was to provide parallel protections to those with disabilities that minorities and women enjoy. According to Claimant, because disabled persons are analogous to these suspect classes, strict scrutiny must apply.

We must reject Claimant's reasoning. The ADA is designed to prevent discrimination between disabled and non-disabled individuals. The dual mental/mental standard places a different standard of proof on mentally as opposed to physically injured workers. We have already determined that the mental/mental standard does not violate the ADA. Claimant's reliance on the House report that accompanied the ADA is misplaced. The appropriate analysis requires the mental/mental standard to be evaluated under the rational basis test as the classification affects economic rights.

The two elements to the rational basis test are (1) a legitimate governmental reason and (2) a classification which is rationally related to that reason. *Strong v. County of Erie*, 122 Pa.Cmwlth. 461, 552 A.2d 350 (1989). Here, there is a legitimate government interest at stake when there is a determination whether a worker claiming a work-related psychic injury has actually suffered an injury. The purpose of the Act was to substitute a form of accident insurance in place of common law rights and liabilities for employees covered by its provisions. *Vescio v. Pennsylvania Electric Co.*, 336 Pa. 502, 9 A.2d 546 (1939). Therefore, there is a legitimate government interest in providing compensation for those employees covered under the Act because an injured employee's means to obtain compensation for his injuries is legislatively curtailed.

Further, under Section 1504 of the Act, 77 P.S. § 2604, the State Workers' Insurance Board (Insurance Board) operates and administers the State Workers' Insurance Fund which provides insurance for employers under the Act. Under Section 1505 of the Act, 77 P.S. § 2605, the State Treasurer is the custodian of the fund. The Insurance Board establishes the amount of premiums for subscribers. *See* Section 1507 of the Act, 77 P.S. § 2607. Therefore, the Commonwealth of Pennsylvania has an interest in seeing that only those employees legitimately injured in the course of their employment receive benefits under the Act. The dual burden classification is rationally related to this government interest because it requires a psychic injury claimant to firmly establish that not only has he suffered an injury but also that the injury was directly caused by an abnormal working condition rather than just the claimant's own subjective reaction to normal working conditions.

Accordingly, we affirm.

### ORDER

AND NOW, this 30th day of October, 2000, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.