United States Court of Appeals,

Eleventh Circuit.

Nos. 95-2660, 95-2850, 95-2859.

Earl L. CRAMER, an individual, on behalf of himself and all others similarly situated;  and, Robin Kessler, an individual, and on behalf of herself and all others similarly situated, Plaintiffs-Appellants,

v.

STATE OF FLORIDA;  Lawton Chiles;  Shirley O. Gooding;  Gerald A. Lewis;  Broedell Plumbing Supply, Inc., a Florida corporation, et al., Defendants-Appellees.

Russell ARQUETTE, Plaintiff-Appellant,

v.

SARASOTA COUNTY SCHOOL BOARD, a Sarasota County government agency, and Riscorp Management Services, Inc., a Florida corporation d/b/a Sarasota International Risk and Insurance Services, Inc., Defendants-Appellees.

James E. MORRISON, Plaintiff-Appellant,

v.

JANSEN AND SONS OF FLORIDA, INC., a Florida Corporation and Florida Employers Insurance Service Corporation, a Florida Corporation, Defendants-Appellees.

July 24, 1997.

Appeals from the United States District Court for the Middle District of Florida. (No. 94-1995-Civ-T-21(A), Ralph Nimmons, Judge.

Before TJOFLAT and COX, Circuit Judges, and VINING[*], Senior District Judge.

TJOFLAT, Circuit Judge.

These consolidated appeals present the appellants' vague and poorly articulated claims that a myriad of defendants discriminated against them on the basis of their disabilities, in violation of Title I of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12111-12117 (1994), by complying with the terms of Florida's workers' compensation statute.  We affirm the district court's dismissal of appellants claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief.  We begin with a discussion of the background leading up to these cases, then turn to an examination of

[*]Honorable Robert L. Vining, Jr., Senior U.S. District Judge for the Northern District of Georgia, sitting by designation.

what claims appellants make in their virtually indecipherable complaints, and conclude with an explanation of why we affirm the district court's judgment.

I.

Under the Florida workers' compensation law ("the Florida law"), an employee who suffers an on-the-job injury that leaves him with a permanent partial bodily impairment is eligible for certain benefits. *See* Fla. Stat. § 440.15 (1993 & 1994 Supp.). The statutory scheme provides that these benefits are determined by reference to an impairment rating schedule: the higher the employee's impairment rating, as determined by the employee's physician, the more benefits the employee receives. *See id.*[1]

Each of the appellants in these consolidated appeals was injured on the job and suffered a permanent, partial bodily impairment. In each case, the appellant's physician, after concluding that the appellant had reached "maximum medical improvement," assigned an impairment rating pursuant to the statutory scheme. Appellant Earl Cramer was dissatisfied with the level of benefits commensurate to the impairment rating assigned him—9% permanent, partial disability of the body as a whole—and filed a claim for disability benefits with the Florida Division of Workers' Compensation (the "Division"). He asked the Division to grant him benefits "equal to the same as those that were being provided to other disabled workers" on the ground that Title I of the ADA, which makes it unlawful for employers to discriminate against "qualified individuals" on account of their disabilities, effectively requires that all persons entitled to compensation benefits under a state workers' compensation law receive identical benefits.[2] Appellant Robin Kessler, after being assigned an impairment rating of 7% by her physician, also filed a claim with the Division. She

---

[1]The statutory scheme was substantially revised for 1994. Two of the appellants were injured in 1993 and therefore are subject to the 1993 version of the Florida law, and two were injured in 1994 and therefore are subject to the 1994 version. *See Garcia v. Carmar Structural,Inc.,* 629 So.2d 117, 119 (Fla.1993). The changes made to the scheme are not relevant for present purposes. The point is that both schemes tie the total benefits for which an injured employee is eligible to that employee's impairment rating. This basic scheme remains in place today.

[2]Cramer apparently accepted as correct the impairment rating his physician gave him. What he sought was more compensation than the Florida law provided for his rating—that is, the same benefits accorded "all other disabled workers." Cramer did not indicate what benefits "all other disabled workers" were receiving and thus the amount he should receive.

sought disability benefits "equal to the eligibility provided to all other disabled workers entitled to "impairment' benefits."[3] Appellant James Morrison's physician assigned him a 9% impairment rating. Appellant Russell Arquette's physician assigned him a 10% impairment rating. It is unclear from the complaint whether or not Morrison and Arquette filed claims in the Division challenging the level of benefits accorded to them on the basis of these disabilities.

While Cramer and Kessler's claims were pending before the Division, those appellants, having obtained right-to-sue letters from the Equal Employment Opportunity Commission, filed in the district court the lawsuit now before us in appeal number 95-2660. They named as defendants their respective employers, their employers' workers' compensation insurers and/or insurance servicing agents,[4] as well as the State of Florida, the Governor of Florida, the Treasurer and Insurance Commissioner of Florida, the Florida Secretary of the Department of Labor and Employment Security, and the state Comptroller (the "state defendants"). All of these defendants are appellees.

Although the complaint Cramer and Kessler filed does not inform us of the Division's disposition of their claims, we now know that the Division rejected Cramer's claim; that Cramer appealed its decision to the First District Court of Appeal; and that that court certified to the Supreme Court of Florida the same issue Cramer now raises: Whether the Florida law's use of impairment ratings violates Title I of the ADA. *Cramer v. Brodell Plumbing Co.,* 661 So.2d 122 (Fla. 1st. Dist. Ct. App. 1995). We also know that the supreme court answered the question in the negative, holding that the Florida law's use of impairment ratings to determine benefits does not violate the ADA. *Cramer v. Broedell Plumbing Supply,* 675 So.2d 118 (Fla.1996) (citing *Barry v. Burdines,* 675 So.2d 587 (Fla.1996)). The Division's rejection of Cramer's claim was therefore

---

[3]Like Cramer, Kessler did not indicate the amount of compensation that she was attempting to recover.

[4]Cramer's employer was Broedell Plumbing Supply, Inc.; its insurer is FCCI Mutual Insurance Co. ("FCCI"). FCCI's servicing agent, also a named defendant in the case, is Florida Employers' Insurance Service Corp. Kessler's employer was Winn-Dixie Stores, Inc. Its servicing agent, also a named defendant, is Crawford & Company.

affirmed.[5]  Cramer did not petition the Supreme Court of the United States for a writ of certiorari; accordingly, the individual claim he presents here has been disposed of once and for all.  *See District of Columbia Court of Appeals v,. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983);  *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923).

Cramer and Kessler's complaint is a rambling "shotgun" pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming.  The complaint states, in its first paragraph, that "[t]he jurisdiction of this Court is invoked under the provisions of the Americans With Disabilities Act ... 42 U.S.C. § 12112 *et seq.,* and pursuant to 42 U.S.C. § 2000(e) *et seq.,* for the purpose of determining the question of actual controversy between the parties as herein more fully appears."[6]  By citing these statutory provisions, Cramer and Kessler informed the district court that they were prosecuting ADA discrimination

---

[5]Cramer's counsel, Alex Lancaster, Amy Sergent, and Deborah Conley, failed to inform the district court or this court that the issue before us was raised in an appeal to the First District Court of Appeal, that that court certified the issue before us to the Supreme Court of Florida, and that the supreme court decided the issue adversely to Cramer.  In citing several lists of "related cases" to the district court—some of which they had brought—counsel made no reference to Cramer's appeal to the First District Court of Appeal.  Counsel also omitted to include this appeal in citing "related cases" to us, despite the fact that they had several opportunities to do so.

Nor did counsel inform us of Cramer's appeal in oral argument—even though a member of this court suggested to Lancaster that the appropriate forum for challenging the Florida law was the First District Court of Appeal, not a federal district court.  Cramer's attorney should have responded to this suggestion by stating that Cramer had pursued the state court route and that the Florida Supreme Court had decided the issue against him.

We discovered what appeared to be Cramer's state court appeal while preparing this opinion.  We asked counsel, by letter, to inform this court whether that case was indeed Cramer's case.  In response, Cramer's counsel confessed that the case was indeed Cramer's.  Counsel's failure to disclose the existence of Cramer's state court litigation is reprehensible.  We surmise that counsel intended to conceal the matter from this court because they knew that the *Rooker-Feldman* doctrine barred Cramer's suit, which, in effect asked us to review Florida Supreme Court's decision.  *See infra.*

[6]We assume this refers to 42 U.S.C. § 2000e-5(f)(3), which provides in pertinent part that "[e]ach United States district court ... shall have jurisdiction of actions brought under [42 U.S.C. § 2000e-5]," and to 42 U.S.C. § 12117(a), which provides that "[t]he powers, remedies, and procedures set forth in section[ ] ... 2000e-5 ... shall be the powers, remedies, and procedures this subchapter provides to ... any person alleging discrimination on the basis of disability in violation of any provision of [Title I of the ADA]."

claims—claims that their employers had discriminated against them on account of their disabilities. The remaining defendants, they alleged, were liable for such discrimination because they "conspired" with the employers; that is, their employers discriminated against them pursuant to a conspiracy entered into by all of the defendants.

Cramer and Kessler asked that the court enter judgment "granting [them] eligibility for "wage loss' and "impairment disability' benefits based upon their respective disabilities and not merely upon impairment ratings."[7] What such eligibility would mean in terms of benefits was not set forth, but we presume that it would mean that appellants would receive benefits equal to those that the statutory schedule provided for the highest impairment rating.[8]

Cramer and Kessler also asked the district court to enter an order modifying the impairment rating scheme of the Florida law. They contended that any benefits paid pursuant to a state workers' compensation law must be paid on the basis of the ADA definition of disability: "a physical or mental impairment that substantially limits one or more of [a person's] major life activities ...; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2). Thus, according to the complaint, anyone meeting this definition would be entitled to the same level of benefits—that accorded the highest impairment rating. Because the appellants had not received that level of benefits, they also asked the court to order the appellees to pay them the difference between the benefits they actually received and the benefits they would have received if they had been accorded the highest impairment rating.

Perhaps sensing that the district court lacked either the capacity or the authority to modify the Florida law, Cramer and Kessler also asked the court to enter a judgment declaring that the Florida law's impairment rating scheme is invalid because it fails to provide benefits on the basis of

[7]This language presumably means the same thing as "equal to the eligibility provided to all other disabled workers entitled to "impairment' benefits," the language Cramer and Kessler used in presenting their claims to the Division.

[8]We are confident that Cramer and Kessler's complaint makes this claim. Whether it makes the claims we describe in the text which follows, however, is debatable. We give the plaintiffs the benefit of the doubt because, in reviewing the sufficiency of a complaint disposed of under Fed.R.Civ.P. 12(b)(6), we have a duty to determine whether the allegations of a complaint, construed in the light most favorable to the plaintiff, state a claim for relief.

the ADA's definition of disability. Because this would effectively gut Florida's workers' compensation scheme, Cramer and Kessler presumably would be free to pursue their common law remedies; specifically, they could sue their employers under the law existing prior to the Florida's enactment of the workers' compensation law.[9]

Finally, Cramer and Kessler's complaint sought class action relief on behalf of "each and every injured worker who may be entitled to workers' compensation disability benefits pursuant to Fla. Stat. § 440.15 (1990) and Fla. Stat. § 440.15 (1993) after July 26, 1992, who is disabled or perceived as disabled pursuant to the A.D.A." The district court dismissed Cramer and Kessler's case without addressing the question of class certification.[10]

Appellants Morrison and Arquette, proceeding with the same law firm that brought Cramer and Kessler's suit, brought separate suits against their employers and their employers' servicing agents.[11] These suits are before us in appeals 95-2859 and 95-2850. Their complaints mirror Cramer and Kessler's shotgun complaints with three major exceptions: (1) they contain no class action allegations, (2) they do not seek to have the Florida law declared invalid, and (3) in addition to asking for the same compensation payments Cramer and Kessler seek, they seek money damages for "emotional pain and suffering, mental anguish and the loss of the enjoyment of life."[12]

---

[9] The Florida law expressly preempts common law tort remedies for on-the-job injuries suffered by workers in Florida. *See* Fla. Stat. ch. 440.11(1) (1993 & 1994 Supp.).

[10] The complaint alleges that because they are disabled, Cramer and Kessler are not only entitled to the highest level of scrutiny under the due process and equal protection privileges of the State and Federal Constitutions, but also [are] entitled to require the State to use the least intrusive means of achieving the goals of the State in the absence of a compelling state interest.

> Because the complaint does not suggest, much less allege, that the defendants, acting alone or in concert, actually denied Cramer or Kessler a federal or state constitutional right, and further, since the complaint does not invoke the district court's federal question jurisdiction, *see* 28 U.S.C. § 1331 (1994), we treat the references to due process and equal protection and the federal and state constitutions as mere window dressing.

[11] Morrison's employer is Jansen and Sons of Florida, Inc., whose servicing agent is Florida Employers Insurance Service Corp. Arquette's employer is Sarasota County School Board; its servicing agent is Riscorp Management Services, Inc.

[12] Morrison's and Arquette's complaints contain no references to due process, equal protection, or the federal and state constitutions.

In each case, the appellees individually moved to dismiss the respective complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief. The district court granted their motions, and these appeals followed. We consolidated them for oral argument and disposition.

## II.

Before we explain why appellants' complaints fail to state a claim for relief, we note that the district court, acting on its own initiative, should have stricken appellants' complaints and instructed counsel to replead their cases—if counsel could in good faith make the representations required by Fed.R.Civ.P. 11(b).[13] The court clearly had the power to do this. As we have stated on several other occasions, shotgun complaints of the sort filed in these cases are altogether unacceptable. *See e.g., Ebrahimi v. City of Huntsville Board of Ed.,* 114 F.3d 162 (11th Cir.1997) (per curiam); *Cesnik v. Edgewood Baptist Church,* 88 F.3d 902, 905 & n. 9 (11th Cir.1996) *cert. denied,* --- U.S. ----, 117 S.Ct. 946, 136 L.Ed.2d 834 (1997); *Anderson v. District Bd. of Trustees of Cent. Fla. Community College,* 77 F.3d 364, 366-67 (11th Cir.1996); *Pelletier v. Zweifel,* 921 F.2d 1465, 1517-18 (11th Cir.), *cert. denied,* 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991); *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir.1984).

Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources. Moreover, justice is delayed for the litigants who are "standing in line," waiting for their cases to be heard. The courts of appeals and the litigants appearing before them suffer as well. Because the complaints in this case are practically incomprehensible, oral argument was necessary in order to determine what

---

[13]Rule 11(b) states in relevant part:

> By presenting to the court ... a [complaint], an attorney ... is certifying that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose ...; [and]
>
> (2) the claims ... and other legal contentions therein are warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law....

appellants were claiming. Because the district court had not required appellants to replead their claims in an intelligible fashion, appellants' argument to us was not helpful.[14] As is often the situation when we review a civil case framed with shotgun pleadings, on close scrutiny these appeals simply "fell apart."

### III.

We consider first appellants' individual claims under the ADA seeking compensation benefits on the basis of their "disability." We then consider their claim that the impairment ratings feature of the Florida law should be modified or declared invalid.

### A.

Appellants claim that their employers discriminated against them on account of their disabilities in violation of the ADA. Because such discrimination was the product of a conspiracy between their employers, on the one hand, and the employers' insurance carriers and insurance servicing agents and the state defendants, on the other hand, appellants contend that the latter are also liable to them under the ADA. The monetary recovery appellants seek against the appellees, jointly and severally, is the difference between the benefits they have received under the Florida law and the benefits they would have received had they been awarded benefits on the basis of their disabilities: the highest level of benefits available.

We dispose of appellants' claims against the employers' insurers and insurance servicing agents and the state defendants by holding that such claims are patently frivolous. First, appellants have pled no facts indicating that these appellees conspired with the employers. Second, appellants' attorneys have cited no authority which holds, or even hints at the possibility, that these appellees could be held liable under the ADA.[15] We therefore move to appellants' ADA claims against their

---

[14]Because appellees were unable to discern what appellants were claiming—other than money and an opportunity to litigate the claims of thousands of class members—their argument also was, for the most part, unhelpful.

[15]As noted in the text *infra,* the ADA prohibits discrimination by "covered entities," which are "an employer, employment agency, labor organization or joint labor-management committee." 42 U.S.C. § 12111(2). Appellants have not alleged, and could not allege without running afoul of Fed.R.Civ.P. 11, that the employers' insurers and/or insurance servicing agents or the state defendants were covered entities under the ADA.

employers.

In order to state a claim under the ADA, a plaintiff must allege (1) that he suffers from a disability, (2) that he is a qualified individual, and (3) that a "covered entity" discriminated against him on account of his disability. *See Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1526 (11th Cir.1997). The appellants fail to state a claim because they do not sufficiently allege that they are "qualified individuals" within the meaning of the ADA.

The ADA defines a "qualified individual" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. 12111(8). Only appellant Morrison alleges that he is a "qualified individual," but his complaint contradicts this by stating that he is unable to return to work or perform the essential functions of his job. Appellants Cramer, Kessler, and Arquette do not allege that they are "qualified individuals." They could not do so because, as they state in their complaints, they are unable to perform the essential functions of their jobs. In short, no appellant states a claim for relief under the ADA.

### B.

The appellants also seek a court order either modifying the Florida law or declaring it invalid. It is unclear under what legal theory the appellants make this claim. To the extent that the appellants seek this relief under the ADA, we must reject their claims because they do not allege that they are "qualified individuals" and therefore do not state a claim for relief under the ADA. *See supra* part III.A. To the extent that appellants attempt to make this claim under some other unspecified legal theory, we lack subject matter jurisdiction to hear this claim. The appellants invoked the district court's subject matter jurisdiction pursuant to the ADA only. At no point in their complaint did they invoke the federal question jurisdiction of the district court, *see* 28 U.S.C. § 1331, or assert claims under a federal statute other than the ADA.

The fact that appellants seek to prosecute this claim as a class action on behalf of "each and every worker who may be entitled to workers' compensation disability benefits [pursuant to Florida law and] who is disabled or perceived as disabled pursuant to the A.D.A." does not change the

result. A plaintiff may not maintain a class action on behalf of others if the plaintiff himself has not alleged that he has suffered, or will suffer, an actual injury.[16] *O'Shea v. Littleton,* 414 U.S. 488, 493-95, 94 S.Ct. 669, 675-76, 38 L.Ed.2d 674 (1974) (holding that such a plaintiff does not establish an Article III case or controversy and therefore cannot seek relief for himself or any of the alleged class members). As noted above, Cramer and Kessler have not alleged that they are "qualified individuals" who have suffered discrimination at the hands of their employers; they therefore have alleged no injury under the ADA. Nor have they alleged any other injury. Moreover, Cramer and Kessler's complaint also fails even to allege that the class members are "qualified individuals" entitled to the protections of the ADA. Cramer and Kessler have thus filed a class action lawsuit in which neither the named class representatives nor the purported class members have suffered a cognizable injury.

IV.

If appellants Morrison and Arquette believe that they have been shortchanged by the benefits they have received for their injuries because Florida has not adopted the ADA's definition of disability, we suggest that they follow the route Cramer and Kessler took: they can file a claim for increased benefits with the Division. If the Division rejects their claims, they can appeal to the First District Court of Appeal of Florida, and if the state courts reject their claims, they can seek review in the Supreme Court of the United States. What they cannot do is file a complaint in federal court which fails to state a cause of action but asks the court to issue a judgment endorsing appellant's reading of the Florida law in the wake of the ADA's enactment. Because appellants fail to state a claim for relief under the ADA, and because we have no jurisdiction to consider any other claims, we AFFIRM the judgment of the district court dismissing appellants' claims for failure to state a claim for relief.

The appellants' appeal of the district court's dismissal of their claims against the employers' insurance companies, insurance servicing agents, and state defendants is particularly disturbing to

---

[16]Nor does bringing a claim as a class action under Fed. Rule Civ. P. 23 provide an independent basis for federal court subject matter jurisdiction. *See Willy v. Coastal Corp.,* 503 U.S. 131, 135-136, 112 S.Ct. 1076, 1079, 117 L.Ed.2d 280 (1992).

the court. Appellants' allegations that these parties conspired with the appellants' employers to violate the ADA are nothing more than bald conclusions. Nowhere in their complaints is there an allegation of fact that would permit the inference that such a conspiracy existed and that, pursuant to the conspiracy, the employers achieved its objective—discrimination against qualified individuals in violation of the ADA.

We cannot let this conduct go unsanctioned. Fed. R.App. P. 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." We hereby give appellants' counsel, Lancaster, Sergent, and Conley, twenty-one days from the date of the publication of this opinion in which to show cause, in the form of a letter addressed to the clerk of this court, why we should not order counsel to pay to these appellees double costs and the expenses, including attorneys' fees, *see Pelletier,* 921 F.2d at 1523, they incurred in defending these appeals.[17]

SO ORDERED.

---

[17]Our cases hold that Rule 38 sanctions may be imposed on counsel. *See e.g., Taiyo Corp. v. Sheraton Savannah Corp.,* 49 F.3d 1514, 1515 (11th Cir.1995)(finding counsel liable for Rule 38 sanctions).