**George R. YOUNG, III, Plaintiff,**

v.

**SOUTHTRUST BANK, N.A., et al., Defendants.**

**Civil Action No. 95–C–683–N.**

United States District Court, M.D. Alabama, Northern Division.

March 25, 1999.

**1276**

Marcus W. Reid, Cleophus Thomas, Jr., Frederic A. Ransom, Reid & Thomas, Anniston, AL, Theresa L. Watson, Washington, DC, for George R. Young, III.

Charles Nichols Parnell, III, James McCauley Smith, Parnell & Smith, Parnell & Crum, PA, Montgomery, AL, for Southtrust Bank, N.A., Clarence Pouncey.

Patricia A. Snyder, Kenneth E. Vines, Redding Pitt, U.S. Attorney, Ann Ashton Holmes, U.S. Attorney's Office, Montgomery, AL, Bernadette C. Sargeant, U.S. Attorney's Office, Washington, DC, for U.S. Department of the Army, United States of America.

## MEMORANDUM OPINION AND ORDER

CARROLL, United States Magistrate Judge.

### I. INTRODUCTION AND PROCEDURAL HISTORY

The original complaint in this case was filed on February 8, 1994 in the United States District Court for the District of Columbia. The plaintiffs in the original complaint were George Young, and Young–Robinson Associates, a business located in Montgomery, Alabama. South-Trust Bank of Montgomery, Alabama, and its Senior Vice President Clarence Pouncey, and the Department of the Army and Phyllis Banks–West and Vicki Archiletti, Army contracting employees from Fort Lee, Virginia, were named as defendants. The original complaint included a "due process" claim, Racketeer Influenced and Corrupt Organizations Act (RICO) claim and state law claims for tortious interference and fraud.

On April 11, 1994, the plaintiff George Young filed an amended complaint against the same defendants named in the original complaint. Young–Robinson Associates, however, was no longer named as a party-plaintiff.[1] The amended complaint contains nine counts—a RICO claim (Count I); a race discrimination claim (Count II); a conspiracy claim brought under 42 U.S.C. § 1985 (Count III); Lender Liability (Count IV); Arbitrary and Capricious Agency Action (Count V); Unlawful Foreclosure (Count VI); Fraud, Bad Faith and Unjust Enrichment (Count VII); Tortious Interference (also Count VII); and Intentional Infliction of Emotional Distress (Count VIII). On May 18, 1994, the United States was substituted as a defendant on all common law tort claims.

---

1. Apparently, Young–Robinson Associates is no longer a viable entity. In support of a motion to dismiss filed by SouthTrust and George Pouncey prior to the filing of the amended complaint, counsel filed an order entered by the Circuit Court of Montgomery County, Alabama on March 1, 1994 appointing a receiver for Young Robinson for the purpose of winding up the business.

On May 22, 1995, this case was transferred from the United States District Court for the District of Columbia to this court. On January 3, 1996, the court allowed the plaintiff to amend his complaint to add the Small Business Administration (SBA) as a defendant.

On November 24, 1997, the case was continued generally. The parties subsequently consented to have a magistrate judge exercise case-dispositive jurisdiction and the case was referred to the undersigned magistrate judge on January 5, 1998. According to a joint submission of the parties, the following motions are pending for resolution: [2]

(1) The Army Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment filed May 2, 1994 directed to the amended complaint of April 11, 1994 (Doc # 25); [3]

(2) The Army and United States Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment filed September 29, 1995 (Doc # 58) and refiled March 29, 1996 (Doc # 90); [4]

(3) The SBA's Motion to Dismiss or for Summary Judgment filed May 1, 1996 directed to the Second Amended Complaint (Doc # 95); [5]

(4) The Federal Defendant's and SouthTrust's Joint Motion to Stay discovery filed July 22, 1996 (Doc # 103); [6]

(5) Defendants SouthTrust and Pouncey's Motion for Dismissal or in the Alternative, Summary Judgment filed on October 19, 1995 (Doc # 68).[7]

There are other motions not noticed by counsel which are still pending.[8] For purposes of this opinion, the United States, the Department of the Army, Banks–West and Archiletti will be collectively described as the federal defendants. This memorandum opinion addresses each and every motion to dismiss and/or for summary judgment filed by those defendants. A separate opinion will address the claims against the Small Business Administration. And, a separate order will address the claims against SouthTrust and Pouncey.

## II. FACTUAL BACKGROUND

On July 26, 1989, plaintiff George R. Young, III and his firm, Young–Robinson Associates, Inc., were awarded an Army contract, DAHC44–89–C–0019, for commissary shelf stocking and custodial services at the Army's facility in Fort Benning, Georgia. Defendant Vicki Archiletti was eventually assigned as the contracting officer after the original contracting officer

2. On February 3, 1998, this court issued the following order:

> For good cause shown, it is hereby ORDERED that the parties file a joint status report on or before March 2, 1998. The report should include a statement by the plaintiff of the claims which he is currently pursuing as well as a listing of all motions upon which counsel for the parties currently seek a ruling. The court will assume that any motion which is not listed has been abandoned by counsel and will be denied.

3. The plaintiffs were provided an opportunity to respond to the motion by order dated February 10, 1995.

4. The motion was set for submission by order dated April 5, 1996.

5. This motion was set for submission by order dated May 3, 1996.

6. This motion was set for submission by order dated July 24, 1996.

7. This motion was set for submission by order dated October 25, 1996. SouthTrust and Pouncey also suggest that an amended motion to dismiss filed "on or about June 6, 1996" is also pending. There is no amended motion to dismiss in the court file. On June 26, 1996, SouthTrust and Pouncey filed a supplementary memorandum in support of their original motion. The court will consider that supplementary memorandum in deciding the motion to dismiss.

8. Some of these motions overlap significantly and addressed issues such as venue which have been mooted by the transfer of this case to this district. The government also filed a supplemental motion to dismiss on August 5, 1998 (Doc. # 135).

was reassigned to another Army facility. One of her primary responsibilities was overseeing the performance of the contract. In that capacity, Ms. Archiletti had cause to identify numerous performance deficiencies and to issue "cure notices" requesting that plaintiffs correct those deficiencies. Defendant Phyllis Banks–West was the contract administrator for plaintiffs' Army contract. On January 3, 1990, she received a "Notice of Assignment of Contract" from defendant SouthTrust Bank and subsequently dated documents which indicated that the bank had been assigned all payments due to plaintiff Young–Robinson Associates under the Fort Benning contract. Ms. Archiletti informed Young–Robinson of the assignment notice.

Plaintiffs' contract performance eventually led to an Army Termination for Default which plaintiffs appealed administratively to the Armed Services Board of Contract Appeals ("ASBCA"). While the appeal was pending, plaintiffs and the Department of the Army entered into a settlement agreement providing that plaintiffs would dismiss their appeal with prejudice in exchange for payment of $7500 in settlement on the outstanding balance due on the contract. The settlement agreement included "any and all claims, including attorney's fees, costs, and interest, arising from DAHC44–89–C–0019." On September 27, 1991, Young–Robinson's Atlanta counsel forwarded an executed copy of the settlement agreement to Ms. Archiletti. On October 1, 1991, Ms. Archiletti received notice that plaintiffs' ASBCA claim had been dismissed with prejudice.

In a letter dated September 16, 1991, counsel for defendant SouthTrust Bank had informed Ms. Archiletti that the bank was claiming a "perfected security interest and assignment in any and all proceeds paid under" plaintiffs' Fort Benning contract. On September 30, 1991, plaintiffs' Washington, D.C. counsel sent Ms. Archiletti a letter claiming that Young–Robin-

son had no outstanding assignment with SouthTrust Bank. Plaintiffs' Atlanta counsel then submitted documentation purporting to show that Young–Robinson's obligation to SouthTrust had been satisfied and that no assignment was in effect with regard to the proceeds from the Fort Benning contract. These documents included an affidavit executed by plaintiff George Young, III and other documents captioned "Notice of Release of Assignment Instrument" and "Release of Instrument of Assignment" which were also both signed by plaintiff Young.[9] Defendant SouthTrust Bank meanwhile continued to assert a right to the Fort Benning contract proceeds and on January 2, 1992, counsel for the bank sent a letter to Vicki Archiletti disputing plaintiffs' representations regarding release of the assignment.

In light of this ongoing dispute between plaintiffs and defendant SouthTrust Bank, Ms. Banks–West withheld payment of the settlement amount from either party. In July 1993, SouthTrust and Young–Robinson, through its Atlanta counsel, executed an agreement to divide the $7500 proceeds. A copy of their agreement was forwarded to the Army's representatives and funds for payment of the settlement amount were requested. On December 3, 1993, Ms. Banks–West sent plaintiffs' Atlanta counsel a letter requesting execution of the necessary forms for release of payment of the $7500 settlement amount. As of April 8, 1994, the executed forms had not been returned to Ms. Banks–West and no payment of the settlement amount has yet been made.

### III. LEGAL STANDARD

#### A. MOTION TO DISMISS

Under well-settled law, a motion to dismiss, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is generally due to be granted only when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his

---

**9.** Plaintiffs did not present a release from the creditor bank, SouthTrust.

claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing a motion to dismiss, the court must accept as true any allegations in the plaintiff's complaint. *See Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703, 706 (11th Cir.1998). There are exceptions to this general rule, however. In cases where a qualified immunity defense is available, the plaintiff must meet a heightened pleading standard which requires more specific fact pleading. *See GJR Investments, Inc. v. County of Escambia, Florida,* 132 F.3d 1359, 1367 (11th Cir. 1998). In cases where a conspiracy is alleged, the plaintiff also must do more than plead vague and conclusory allegations. *See Fullman v. Graddick,* 739 F.2d 553 (11th Cir.1984). Further, the liberal notice pleading standard does not require a court to tolerate shotgun pleadings. *See Cramer v. Florida,* 117 F.3d 1258 (11th Cir.1997).

## B. MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## IV. DISCUSSION

### A. THE CLAIMS AGAINST THE ARMY AND IT'S EMPLOYEES

The plaintiff has sued the Department of the Army and two employees of that department on alleged constitutional, statutory and common law tort claims. As previously noted, the United States has been substituted as a defendant on the common

law tort claims. These defendants, referenced in the pleadings collectively as the "federal defendants," attack the claims against them on a variety of grounds. The still viable grounds will be discussed in turn.[10]

### 1. FEDERAL TORT CLAIMS

The sole defendant for purposes of the common law torts is the United States. Common law tort claims may proceed against the United States under the provisions of the Federal Tort Claim Act, 28 U.S.C. § 1346(b). However, a tort action may not be commenced against the United States "unless the claimant shall have first presented the claim to the appropriate Federal Agency and his claim shall have been finally denied by the agency in writing."

At the time that plaintiff's complaint was filed, February 8, 1994, no claim had been filed with the Department of the Army. Indeed, a claim was not filed with the Department of the Army until July 15, 1994. The federal defendants thus seek dismissal on the ground that the plaintiff failed to exhaust his administrative remedies.

■ The plaintiff first opposes an exhaustion dismissal on the ground that his filing of a claim after the lawsuit was commenced but before significant activity had taken place satisfies the exhaustion requirement. That argument has been answered by the decision of the United States Supreme Court in *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). In that case, the Supreme Court specifically held that an·action under the Federal Tort Claim Act may not be maintained when the claimant failed to exhaust his administrative remedies prior to filing suit but did so before substantial progress had been made.

The plaintiff's alternative argument is that the filing of a claim for equitable adjustment and a complaint about the termination of the contract satisfies the exhaustion requirement. In opposition to the government's motion to dismiss or in the alternative for summary judgment, the plaintiff has provided a copy of a claim for equitable adjustment and a complaint alleging wrongful termination which he filed with the Armed Services Board of Contract Appeals (ASBCA). The documents are not dated but for purposes of analysis, the court will assume that they were filed with the Army prior to the filing of this lawsuit. The question for resolution is whether those documents can serve as the notice which the statute requires.

■ To satisfy the administrative claim requirement, a claimant must submit a notice that is: (a) in writing; (b) states a sum certain; and (c) provides sufficient information to enable the agency to investigate. The claimant must put a monetary value on the claim, and the amount set forth in the administrative claim sets the upper limit on the *ad damnum* which can be sought in the suit, unless the additional amount sought is based on newly discovered evidence which could not reasonably be discovered at the time the administrative claim was presented, or on the allegation and proof of intervening facts. 28 U.S.C. § 2675(b); *see Kielwien v. United States*, 540 F.2d 676 (4th Cir.1976). The purpose of the notice required by Section 2675(a) is to give federal agencies "a fair opportunity to investigate and possibly settle ... claims." *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir.1999). As the law makes clear, the purpose of Section 2675(a) was to facilitate early disposition of claims and not to place procedural hurdles before potential litigants. *Id.* at 1255 (*citing Lopez v. United States*, 758 F.2d 806, 809 (1st Cir.1985)). The court has serious doubts that the documents presented to the Army constitutes the filing of a claim. The court need not decide that issue, however, because even if the documents can be

---

10. While this case was pending in the United States District Court for the District of Columbia, the federal defendants filed dispositive motions which, *inter alia*, ·raised questions of personal jurisdiction. Those arguments appear to have been mooted by the transfer of this case to this district.

construed as satisfying the exhaustion requirement, the tort claims should still be dismissed. The problem for the plaintiff is two fold: first, all of the tort claims which he presents to this court were not presented in these documents, and second, the claims which were mentioned in the documents are not cognizable under the Federal Tort Claims Act.

In his original and amended complaint, the plaintiff raises the following tort claims against the United States: fraud, bad faith and unjust enrichment (Count VII); tortious interference with a contract and prospective contractual relations (also labeled as Count VII); and intentional infliction of emotional distress (Count VIII).[11] Most of the relief sought in these documents concern breach of contract which is obviously not a tort. The only tort mentioned in the documents and alleged in the complaint filed with the ASBCA is tortious interference with a business relationship.[12] Consequently, the Army defendants were not given any notice that a cause of action for fraud or intentional infliction of emotional distress would be raised again. They arguably were given notice of claims of tortious interference. That notice, however, does not save those claims from dismissal. Under the provisions of 28 U.S.C. § 2680(h), the government may not be sued for

.[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights.

Accordingly, the plaintiff may not sue the United States for its alleged tortious interference with his contracts. Conse-quently, for the reasons set out above, the government's motion to dismiss all of the tort claims because of the failure to exhaust is due to be granted.

## 2. CONSTITUTIONAL AND STATUTORY CLAIMS OF DISCRIMINATION

In Count II of his complaint, Young alleges that he has been discriminated against in violation of the Fifth, Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981 and 1982 because he is an African–American.

### a) DISCRIMINATION CLAIMS AGAINST THE DEPARTMENT OF THE ARMY AND BANKS–WEST AND Archiletti IN THEIR OFFICIAL CAPACITY

The plaintiff has raised constitutional and statutory claims of race discrimination against the Department of the Army and Phyllis Banks–West and Vicki Archiletti in their official capacities. In *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court first held that an individual injured by a federal agent's alleged violation of the constitution may bring an action for money damages against the individual federal agent. In a more recent decision, the Supreme Court, in interpreting the contours of a *Bivens* action, held that a *Bivens* action for damages for violation of constitutional rights may not be brought against a federal agency but may only be brought against individual federal employees. *Federal Deposit Insurance Corporation v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Consequently,

---

**11.** The plaintiff's complaint contains references to other torts. They are not pled as claims for relief in the "Claims for Relief" section of the amended complaint. Fraudulent concealment is mentioned in the statement of facts section, and interference with contractual relationships, malicious interference with business and tortious breach of duty of good faith and fair dealing arising out of contract are mentioned in the section where the RICO claim is pled. The court concludes that these torts have not been ade-quately pled as claims for relief. For the reasons discussed later, if they were adequately pled, they would still be subject to dismissal.

**12.** The complaint filed with ASBCA seeks damages for "wrongful interference with an advantageous business relationship" and "loss of reputation." The plaintiff has pled a separate tortious inference claim in this court but not a separate slander claim.

the plaintiff claims complaining of race discrimination in violation of the constitution against the Department of the Army are due to be dismissed. The same is also its true of the claims against Banks–West and Archiletti in their official capacities. Bringing suit against a federal official in her official capacity is the equivalent of suing an agency of the United States. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). *See also, Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

■ In addition, the plaintiff may not sue the Department of the Army or Banks–West or Archiletti in their official capacity under 42 U.S.C. §§ 1981 and 1982. Neither of those statutes contains an express waiver of sovereign immunity which would allow those statutes to be used in that fashion. *See Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982); *Penn v. Schlesinger*, 490 F.2d 700, 703 (5th Cir.1973), *rev'd on other grounds*, 497 F.2d 970 (5th Cir.1974).

b) *BIVENS* ACTION AND §§ 1981 and 1983 CLAIMS BANKS–WEST AND ARCHILETTI IN THEIR INDIVIDUAL CAPACITIES

The plaintiff also has sued Banks–West and Archiletti for damages in their individual capacities both as a direct *Bivens* action and under the provisions of 42 U.S.C. §§ 1981 and 1982. The defendants seek dismissal on the ground that they are qualifiedly immune and that the plaintiff has failed to meet the heightened pleading standard. In deciding the motion to dismiss, the court must accept all allegations of the complaint as true and must construe the facts in a light most favorable to the plaintiff. *Stephens v. Department of Health and Human Serv.*, 901 F.2d 1571, 1573 (11th Cir.1990). Also, however, as the Eleventh Circuit has noted,

... while *Fed.R.Civ.P.* 8 allows a plaintiff considerable leeway in framing [his] complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a 1983 plaintiff allege with some specificity the facts which make out [his] claim. Some factual detail in the pleadings is necessary to the adjudication of the § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established constitutional right.

*GJR Investments, Inc.*, 132 F.3d at 1367 (*citations omitted*). The law concerning qualified immunity in actions filed under Sections 1981, 1982 and 1983 and *Bivens*-type actions is the same. *See Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998); *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372 (11th Cir.1997); *Adras v. Nelson*, 917 F.2d 1552 (11th Cir.1990). Thus, in resolving the motion to dismiss on qualified immunity grounds in this *Bivens* and Sections 1981 and 1982 action, the court is guided by the standards of Rule 12(b) of the Federal Rules of Civil Procedure and the heightened pleading requirement.

■ As the decision of the United States Supreme Court in *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277(1991), counsels, when resolving the assertion of a qualified immunity defense, the first question the court must decide is whether the plaintiff, indeed, has asserted a violation of a constitutional right. The plaintiff's complaint makes a general allegation that

In the conduct and disposition of the Fort Benning contract, and the ABSCA appeal, the defendants knowingly and intentionally denied, abridged, segregated, withheld, limited, and otherwise abridged, segregated, withheld, limited, and otherwise interfered with the plaintiff's constitutional rights by discriminating against plaintiff on the basis of his African–American race contrary to the Fifth, Thirteenth and Fourteenth

Amendments to the Constitution of the United States (Amended Complaint at paragraph 105).

Discrimination on the basis of race by employees of the United States in the administration of a contract would, indeed, violate the Fifth Amendment. Consequently, the plaintiff has sufficiently alleged a constitutional violation. Having concluded that the plaintiff's complaint sufficiently alleges a constitutional violation, the court next must decide whether the defendants are qualifiedly immune. .

In this circuit, there is a two step analysis for applying the qualified immunity test. First, the defendant government official must prove that she was acting within the scope of her discretionary authority when the allegedly wrongful act occurred. Then the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law. *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983). *See also, Hartsfield v. Lemacks,* 50 F.3d 950 (11th Cir.1995). In this case, there is no question that the defendants were acting within the scope of their discretionary authority. The relevant question thus becomes whether the defendants violated clearly established law.

To be clearly established, the "contours" of an asserted constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In addition, "pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about) the conclusion for every like situated reasonable government agent that what [the] defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc). As the Eleventh Circuit has noted:

When considering whether the law applicable to certain facts is clearly established, the facts of the cases relied on as precedent are important. The facts need not be the same as the facts of the immediate case. But they need to be materially similar. Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.

*Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J., dissenting) (*approved en banc* 998 F.2d 923 (11th Cir.1993)). Stated another way, "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir. 1993), *modified,* 14 F.3d 583 (11th Cir. 1994).[13]

To overcome the defense of qualified immunity, the plaintiff has the burden of pointing to case law which "pre-date[s] the official's alleged improper conduct, involve[s] materially similar facts and 'truly compels' the conclusion that the plaintiff had a right under federal law." *Ensley v. Soper,* 142 F.3d 1402, 1406 (11th Cir.1998) (*citing Lassiter,* 28 F.3d at 1150). To assist the court in assessing the qualified immunity issue, a review of the factual allegations against Banks–West and Archiletti is appropriate.

In paragraph 14 of the amended complaint, the plaintiff makes a general allegation that Banks–West and Archiletti engaged in a "continuing enterprise" with others to cause him injury. In paragraph 48, he notes:

YRA (Young Robinson Associates) was awarded a competitively-bid base year contract with 4 option years to perform shelf stocking and custodial services at the Fort Benning Commissary in Columbus, Georgia on October 15, 1989.

---

**13.** Under the law of this circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the United States Supreme Court, Eleventh Circuit Court of Appeals or the highest court of the state where the case arose. *Jenkins v. Talladega City Bd. of Educ.,* 115 F.3d 821, 827 n. 4 (11th Cir.1997) (*en banc* ).

The contract was administered by the Southeast Commissary Agency at Fort Lee, Virginia. The contracting officer was Vicki Archilleti, and the contract administrator was Phyllis Banks–West. In paragraphs 49 through 54, the plaintiff makes various allegations about how the contract was administered. Specifically he complains that:

1. Neither civilian nor military personnel at Fort Benning were to exercise supervision or control over YRA personnel. (¶ 49)

2. The contract required weekly meetings during the first month and meetings whenever a contract discrepancy report was issued. (¶ 50)

3. The contracting officers held no weekly meetings and no meetings to discuss the contract discrepancy reports. (¶ 51)

4. The contracting officers consistently relied upon Fort Benning commissary personnel to oversee YRA's performance and based all decisions upon their representations. (¶ 53)

5. No action was ever taken by Vicki Archiletti or Phyllis Banks–West to respond to YRA's numerous complaints. (¶ 53)

6. The contracting officers also maintained improper telephonic contacts with Clarence Pouncey and Alan Artman at SouthTrust Bank. (¶ 54)

7. Archiletti and Banks–West have refused to honor proof that all monies due to SouthTrust have been paid in full. (¶ 57)

8. Phillips Banks–WEst wrote to YRA's Atlanta counsel offering a settlement of all claims against the Army. This offer would negate the claim for equitable adjustment and cannot be considered until the ASBCA claim has been settled. (¶ 58)

9. The contracting officers have been dealing improperly with the plaintiff's bankers rather than the plaintiff. (¶ 60)

10. Archiletti and Phyllis Banks–West have interfered with propsective contracting opportunities and have slandered the plaintiff and his business. (¶¶ 61 & 62)

11. Banks–West maintained improper contact with counsel for SouthTrust. (¶ 63)

These paragraphs are the only references to Banks–West and Archiletti in the statement of facts section of the complaint. There are no references to Banks–West and Archiletti in the section styled "Count II—Violation of Civil Rights—Discrimination."

■ The allegations of racial discrimination against Banks–West and Archiletti are vague, general and conclusory, and wholly insufficient to strip them of their qualified immunity. There are no facts pled which, if proven, would establish that they acted against the plaintiff because of his race. As the Tenth Circuit has recently noted:

> The heightened pleading requirement requires that a plaintiff do more than assert bare allegations of a constitutional violation. As we explained... "[t]he complaint must include all the factual allegations necessary to sustain a conclusion that the defendant violated clearly established law." If the original complaint is deficient, the plaintiff must amend his or her complaint to include specific, non-conclusory allegations of fact sufficient for a district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law.

*Breidenbach v. Bolish,* 126 F.3d 1288, 1293 (10th Cir.1997) (*citations omitted*). The plaintiff has included some general statements that would give rise to an inference that Banks–West and Archiletti have treated him improperly or unfairly. There is an absolute dearth of specific facts which would support any inference that they intentionally treated him the way they did because of his race. In short, the plaintiff has utterly failed to point to any acts of Banks–West or Archiletti which would show that they acted in a racially

discriminatory fashion and that their actions were objectively unreasonable · in light of clearly established law.

### c) THE RICO CLAIM

The plaintiff has also sued Banks–West and Arciletti under ·the RICO statute. These defendants possess the same right to qualified immunity under RICO that they possess in a *Bivens*, Section 1981, or Section 1982 action. *See Cullinan v. Abramson*, 128 F.3d 301 (6th Cir.1997), *cited with approval Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1300 n. 34 (11th Cir.1998). As with the *Bivens* and Sections 1981 and 1982 ·claims, the plaintiff has failed to plead the RICO claim with sufficient specificity to strip the defendants of their immunity.

### d) CIVIL CONSPIRACY

 The plaintiff also contends that SouthTrust Bank, the Department of the Army, and Banks–West and Archiletti conspired to delay the settlement of YRA's claim with the ASBCA in violation of 42 U.S.C. § 1985. Although the plaintiff does not refer to a specific provisions under § 1985, the court assumes that the plaintiff is seeking redress under Section 1985(3) since the other provisions of the section could not possibly apply. Under the law of this circuit, the doctrine of qualified immunity is not applicable in cases brought under Section 1985(3). *Burrell v. Board of Trustees of Georgia Military College*, 970 F.2d 785, 794 (11th Cir.1992). Plaintiff's claim, however, fails for other reasons. First, a defendant is subject to liability under Section 1985(3) only if the defendant acted with a racial or otherwise class based animus. *Id.* While the plaintiff raises a general racial discrimination claim, he does not plead that the conspiracy is based on race. Equally as fundamental, his allegations are conclusory and vague. Under the well-settled law of this circuit, a complaint alleging a conspiracy in only vague and conclusory terms should be dismissed. *Fullman v. Graddick, supra.*

In addition, the Department of the Army is not a person within the meaning of Section 1985(3). *See Hoffman v. United States Department of Housing and Urban Development*, 519 F.2d 1160 (5th Cir.1975).

### e) ADMINISTRATIVE PROCEDURES ACT CLAIM

 The plaintiff also seeks declaratory and injunctive relief under the provisions of 5 U.S.C. § 702, the Administrative Procedures Act (APA). Section 702 of the APA grants the right of judicial review to any person " 'adversely affected or aggrieved' by agency action within the meaning of a relevant statute." *Control Data Corp. v. Baldrige*, 655 F.2d 283, 288–89 (D.C.Cir.1981). In Paragraphs 124 through 126 of his amended complaint, the plaintiff alleges that the Army defendants acted arbitrarily and capriciously in the administration of his contract, and that those actions caused him injury. Allegations of improper administration of a government contract to the detriment of a contractor are actionable under the APA. *See Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838 (D.C.Cir.1982). At this stage of the proceedings, it simply cannot be said that the plaintiff can prove no set of facts with regard to the administration of the contract at issue in this case which would entitle him to relief. Accordingly, the motion to dismiss the APA claim is due to be denied.[14]

### SUMMARY

For the reasons set forth above, the court concludes that the only claim against the federal defendants which survives the motions to dismiss is the Administrative Procedures Act claim. However, under the applicable law, the plaintiff also should be provided an opportunity to cure the non-specificity of his pleadings on his race discrimination, conspiracy and RICO claims. *See Williams v. Alabama State University*, 102 F.3d 1179, 1181 (11th Cir. 1997) (Court granted leave to amend after

---

**14.** The federal defendants have invited the court to grant summary judgment on this claim. There has not been sufficient factual .or legal development of this claim for the court to grant summary judgment at this. time.

deciding that the plaintiff's complaint filed to meet the heightened pleading standard). In deciding whether to file an amended complaint, the court refers counsel for the plaintiff to the provisions of Rule 11 of the Federal Rules of Civil Procedure which states in relevant part:

> By presenting to the court ... a [complaint], an attorney ... is certifying that to the best of the [attorney's] knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—(1) it is not being presented for any improper purpose ...; [and] (2) the claims ... and other legal contentions therein are warranted by existing law or by nonfrivolous argument for the extension modification or reversal of existing law or the establishment of new law....

The court also calls counsel's attention to the decision of the Eleventh Circuit in *Cramer v. Florida, supra.* There the court noted:

> Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expenses on the litigants, the court's parajudicial personnel and resources. Moreover, justices is delayed for litigants who are "standing in line" waiting for their cases to be heard.

*Id.* at 1263.

The court understands that the plaintiff believes that he has been wronged by the Department of the Army and its personnel. The federal courts, however, do not sit to review the actions of the government simply because they seem unfair. The complaint in this case appears to the court to be simply a statement of wrongs and an attempt to fit those wrongs into every conceivable cause of action whether the allegations are remediable under the cause of action or not. Of particular concern is that the plaintiff has accused two government employees of acting against him because he is African–American without pleading a single specific piece of evidence to support that claim. The plaintiff is advised, therefore, that the court's granting permission to amend certain claims should not be interpreted as an order to amend. Additionally, the plaintiff should be mindful that the court will closely scrutinize any amendment which is filed to insure compliance with Rule 11. If the plaintiff amends his complaint to again allege that the actions taken against him by the Army contract employees are race based, the court assumes that those allegations have a demonstrable factual basis. If the plaintiff intends to seek damages against those employees, the court assumes that the filing of an amended complaint means that the plaintiff can plead sufficient facts to survive another motion to dismiss on qualified immunity grounds. The plaintiff is specifically referred to the decision of the Eleventh Circuit in *Lassiter v. Alabama A & M University, supra,* and its progeny, which set forth the extremely difficult burden a plaintiff faces in overcoming the defense of qualified immunity. The message to the plaintiff's counsel should be clear. The court will not accept and will strike an amended complaint similar to the ones which the plaintiff has filed previously. Filing such vague complaints does an extreme disservice to the court, the defendants and the plaintiff himself.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the motion to dismiss amended complaint or in the alternative motion for summary judgment filed by the federal defendants on May 2, 1994 (Doc # 25); the motion to dismiss or in the alternative for summary judgment filed by the federal defendants on September 29, 1995 (Doc# 58); the motion to dismiss or in the alternative for summary judgment filed by the federal defendants on March 29, 1996 (Doc # 90); [15] and the supplemen-

---

15. The federal defendants describe this pleading as simply a renewal of the September 25, 1995 motion. It has been docketed as a separate motion and therefore requires as separate order,

tal motion to dismiss filed by the government on August 5, 1998 (Doc. # 135) be GRANTED in part and DENIED in part as follows:

(1) All claims against the United States are DISMISSED with prejudice;

(2) All claims against the Department of the Army except the claim alleging a violation of the Administrative Procedures Act (Count V) are DISMISSED with prejudice;

(3) All claims against Banks–West and Archiletti in their official capacity are DISMISSED with prejudice; and

(4) All claims against defendants Banks–West and Archiletti in their individual capacity are DISMISSED without prejudice and plaintiff is granted leave to amend the complaint against those defendants in their individual capacity. The plaintiff shall file any amended complaint within 30 days of the entry of this order.[16]

It is further ORDERED that the Joint Motion to Stay Discovery filed by the defendants on July 22, 1996 be GRANTED. All discovery shall be stayed pending a scheduling conference.[17]

---

**16.** The claims which may be amended are the *Bivens,* Sections 1981, 1982 and 1985(3), and RICO claims.

**17.** This request was presented to the judge who was previously assigned to this case and all discovery was in fact stayed although there is no formal order granting the motion.